[No. 17397-2-II.   Division Two.   May 18, 1995.]

ROBERT B. KEENE, JR., *Appellant*, v. THE BOARD OF
ACCOUNTANCY, *Respondent*.

*Ray Whitlow* and *Hame, Anderson & Whitlow,* for appellant.

*Christine O. Gregoire, Attorney General,* and *James Silva, Assistant,* for respondent.

FLEISHER, J. — Robert B. Keene appeals an order of the Thurston County Superior Court affirming the Washington State Board of Accountancy's revocation of his certified public accountant license. Keene contends: (1) the regulations governing conduct of public accountants are unconstitutionally vague; (2) the Board erroneously interpreted or applied the law; (3) the evidence is insufficient to support the Board's findings; and (4) the sanctions the Board imposed are excessive or arbitrary and capricious. We reverse the Board's condition for reinstatement, that Keene repay a loan discharged in bankruptcy, and we affirm the remainder of the order.

## FACTS

In April 1986, Bertie Morris became a client of Keene, a certified public accountant (CPA) in Richland, Washington. Morris, an 85-year-old widow, was described as alert and in good health at that time, although she was legally blind. She lived on Social Security and had her savings invested in cer-

tificates of deposit (CD's). Morris hired Keene to help her pay her bills and to prepare her tax returns.

In June 1986, Morris loaned $10,000 to Keene's corporation, RBK Corporation (RBK), apparently because Keene offered her 10 percent interest and she wanted to earn more than she was earning on her CD's. To make the loan, Morris cashed a CD; the remainder was put into an account for her care.

Keene was the sole stockholder in RBK, which bought and sold real estate contracts. He needed Morris's loan to pay another of RBK's creditors. During the fiscal year in which the money was borrowed, RBK had a total income of $1,609 and a net operating loss of $31,552. In his testimony Keene admitted that RBK's financial condition was "weak". Morris knew the purpose of the loan, but not the financial condition of RBK.

In August or September 1986, Morris gave Keene a power of attorney to enable him to pay her bills. Shortly thereafter, she moved to a Texas nursing home, where her health quickly deteriorated. Morris died there in 1989.

In early 1987, Morris's daughter, Lea Boyd, also obtained a power of attorney to act on behalf of her mother. At about the same time, an attorney was appointed to act as guardian ad litem for Morris, and Boyd was appointed guardian of her mother. The parties disagree as to when Keene knew of these actions.

In the spring of 1987, Keene made an unsecured loan of $6,000 of Morris's money to Roy Adams, a friend and former client. Adams, who had been in bankruptcy in 1983 or 1984, was in the business of raising floppy-eared rabbits. Keene said he was confident Adams would repay him because previous loans he had made to Adams had been repaid. To make the loan, Keene cashed a $9,000 CD of Morris's and put the remainder in a bank account to pay her bills. Keene says Adams repaid the money, but Keene never provided a satisfactory accounting of the funds.

Keene said that, at the time he made this loan, he did not know a guardian had been appointed for Morris. He also

said he believed his power of attorney was still valid, and he continued writing checks to himself from Morris's account, for services he said he provided her.

In June 1987, Boyd first became aware of the $10,000 loan her mother had made to RBK, and she asked Keene about the money. Keene had filed personal bankruptcy in November 1986. Shortly after Boyd inquired about the loan to her mother, Keene amended his bankruptcy filing to include this debt. After Morris's death, Keene paid approximately $1,000 to her estate.

In May 1990, the Washington State Board of Accountancy (the Board) served a statement of charges on Keene. Following a hearing in August 1990, the Board found that Keene had been negligent and had violated rules of conduct governing CPA's. The Board revoked Keene's license for 5 years and further ordered that, to be reinstated after that time, Keene must pass the CPA exam, reimburse Morris's estate, and provide at least three affidavits attesting to his character and "ability to maintain high standards of personal conduct in all matters affecting his fitness to practice public accounting".

The Thurston County Superior Court affirmed the Board's order, and Keene then appealed to this court.

## DISCUSSION

■ Under the Washington Administrative Procedure Act (WAPA), a party challenging the validity of an agency action bears the burden of demonstrating invalidity. RCW 34.05.570(1)(a). "In an appeal from a judicial review of an administrative decision, the appellate court applies the appropriate standard of review directly to the administrative record." *Snohomish Cy. v. State*, 69 Wn. App. 655, 664, 850 P.2d 546 (1993), *review denied*, 123 Wn.2d 1003 (1994).

## I

The Board has the power to revoke, suspend, or refuse to renew a license for violation of a rule of professional conduct. RCW 18.04.295(4). Here, the Board found that Keene violated several provisions of the Washington Administrative Code

governing professional conduct of CPA's. The Board used its statutory authority to revoke his CPA license. Keene contends that three of these rules, former WAC 4-25-060, 4-25-080, and 4-25-130, should be declared invalid because they are unconstitutionally vague.[1]

■ The WAPA provides that violation of constitutional provisions is one ground on which a court may declare an agency rule invalid. RCW 34.05.570(2)(c). However, "[a]n administrative rule adopted pursuant to statutory authority is presumed valid and should be upheld when consistent with the enabling statute." *Ravsten v. Department of Labor & Indus.*, 108 Wn.2d 143, 154, 736 P.2d 265 (1987). Similarly, regulations and statutes are presumed to be constitutional. *See Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991).

■ Because due process protections apply to disciplinary proceedings, rules imposing sanctions for unprofessional conduct must not be unconstitutionally vague. *Haley,* at 739. As with a statute, a rule is void for vagueness "if it is framed in terms so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application'." *Haley*, at 739 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926)). However, it is not necessary that a person be able to predict with complete certainty exactly when his or her conduct would be classified as prohibited. *Haley*, at 740. Moreover, "the use of vague terms does not necessarily render a statute as a whole impermissibly vague." *Haley*, at 741.

Former WAC 4-25-060 states the purpose of the Rules of Professional Conduct and notes that the rules are premised on obligations of public accountants to the general public and to the business community. Included is "the obligation to maintain independence of thought and action". Former WAC

---

[1]In 1993, the regulations governing public accountants' conduct were extensively revised. New rules were added, addressing in detail the principles of conduct associated with CPA's, such as integrity, objectivity, independence, competence, and protecting clients' confidences. WAC 4-25-600 through 4-25-661. All references to the WAC's in this opinion are to the earlier versions in effect at the time this case was before the Board.

4-25-060 . This rule expresses general principles and serves as a preamble to the Rules of Professional Conduct. Whatever uncertainty the rule may create as to specific prohibited conduct is dispelled by the rules that follow it. Therefore, former WAC 4-25-060 is not unconstitutionally vague.

■ Former WAC 4-25-080 addresses a CPA's obligations to act with independence, integrity and objectivity. The portion of former WAC 4-25-080 under which Keene was sanctioned states that "[a] licensee shall not concurrently engage in the practice of public accountancy and in any other business or occupation which impairs his independence or objectivity in rendering professional services." This language is not so vague that persons of common intelligence must guess at its meaning. The rule also contains examples of conduct considered to impair independence when expressing an opinion on financial statements. It is true that former WAC 4-25--080 does not attempt to list all behaviors which, if engaged in concurrently, would impair independence or objectivity. However, the rule is not void simply because it does not list every possible prohibited behavior.

Moreover, the above quoted portion of former WAC 4-25--080 addresses the very type of conflict of interest in which Keene became involved. He was concurrently engaged in directing a closely held corporation in precarious financial condition, and in practicing public accountancy. When he solicited or accepted loans from accounting clients for his corporation, it was certainly foreseeable that his independence or objectivity in serving these clients could become impaired. No guesswork is required to determine what is prohibited; therefore, former WAC 4-25-080 is not unconstitutionally vague.

Former WAC 4-25-130 addresses other responsibilities and practices and states that "[a] licensee shall not commit any act that reflects adversely on his fitness to engage in the practice of public accountancy." The rule then lists examples of such prohibited acts.

In *Haley*, a doctor who had been disciplined contended that a statute governing conduct of physicians, which con-

tained similarly imprecise language, was unconstitutionally vague. The statute at issue in *Haley* states that it is unprofessional conduct for a physician to commit "any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession . . .". *Haley*, 117 Wn.2d at 726 (quoting RCW 18.130.180(1)). The court conceded that the meaning of the term "moral turpitude" is difficult to fathom, but reading the statute as a whole, it interpreted the law as prohibiting conduct indicating unfitness to practice the profession. *Haley*, at 742. Thus, the court found the statute not unconstitutionally vague. *Haley*, at 739.

In reaching this conclusion, the *Haley* court followed a California case, *Morrison v. State Bd. of Educ.*, 1 Cal. 3d 214, 461 P.2d 375, 82 Cal. Rptr. 175 (1969). In *Morrison*, a teacher challenged for vagueness a statute authorizing the state board of education to revoke a teaching certificate for "immoral" or "unprofessional" conduct and conduct "involving moral turpitude". *Morrison*, 1 Cal. 3d at 220, 230. The *Haley* court stated,

> *Morrison* established that "where the language of a statute fails to provide an objective standard by which conduct can be judged, the required specificity may nonetheless be provided by the common knowledge and understanding of members of the particular vocation or profession to which the statute applies."

*Haley*, at 742 (quoting *Cranston v. Richmond*, 40 Cal. 3d 755, 765, 710 P.2d 845, 221 Cal. Rptr. 779 (1985)).

■ Thus, under *Haley*, former WAC 4-25-130 is not unconstitutionally vague. Like the statute at issue in *Haley*, former WAC 4-25-130 prohibits conduct indicating unfitness to practice the particular profession. While it does not provide an objective standard for judging accountants' conduct, the common knowledge and understanding of other CPA's provide additional specificity.

## II

■ The Board also found Keene in violation of former RCW 18.04.295(2) (Laws of 1986, ch. 295, § 11). Under that provision, the Board may revoke an accountant's license for

"[d]ishonesty, fraud, or negligence in the practice of public accounting". Former RCW 18.04.295(2) (Laws of 1986, ch. 295, § 11). Keene contends that the Board improperly interpreted or applied the law.[2] Under the WAPA, the court may grant relief from an agency order in an adjudicative proceeding if it determines that the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d). An agency's interpretation and application of the law are subject to de novo review. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 403, 858 P.2d 494 (1993); *Harold LeMay Enters. v. Utilities & Transp. Comm'n*, 67 Wn. App. 878, 881, 841 P.2d 58 (1992). Under the de novo standard, the reviewing court essentially substitutes its judgment for that of the administrative body, but gives substantial weight to the agency's view of the law. *Kellum v. Department of Retirement Sys.*, 61 Wn. App. 288, 291, 810 P.2d 523 (1991).

Keene makes three arguments with regard to the Board's interpretation or application of this law. First, he contends that he is not liable for negligence with regard to Morris's daughter because he was not in privity of contract with her. Even if we accept this premise, Keene's argument fails. His actions with regard to Morris's daughter were a very minor aspect of the conduct found to have been negligent. Keene accepted a loan from a client for his corporation, which was nearly bankrupt; he also made an unsecured loan of the client's money to a friend who had recently been through bankruptcy. This is the conduct that the Board found negligent. Substituting our judgment for that of the Board leads to the same conclusion.

■ Second, Keene argues that his conduct was within the standard of care accountants owe to their clients. This standard is enunciated in 1 C.J.S. *Accountants* § 12, at 678 (1985):

> A licensed public accountant is required to use reasonable care and competence in the performance of professional services

---

[2]Keene phrases his second and third assignments of error in terms of the trial court's action. However, as noted above, in reviewing an agency action, this court stands in the same position as the trial court, applying the WAPA standards directly to the record that was before the Board. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

for a client. . . . Otherwise stated, a licensed public accountant has the duty to exercise that degree of care, competence, and skill which is exercised by reasonably competent members of the accountancy profession under the circumstances.

(Footnote omitted.) Thus, the question presented is whether a reasonably competent CPA would have: (1) accepted a loan from an elderly, legally blind client whose only investments were in CD's, for a corporation on the verge of bankruptcy; and (2) loaned that client's money to a formerly bankrupt friend, to help his business of raising rabbits. Clearly, a reasonably competent CPA would perceive that these activities posed a real financial risk to the client.

■■■ Moreover, Keene's power of attorney made him Morris's agent, and thus conferred on him the fiduciary duty of loyalty that accompanies that relationship. *See Bryant v. Bryant*, 125 Wn.2d 113, 118, 882 P.2d 169 (1994); Restatement (Second) of Agency § 1(1) (1958). This duty required Keene to avoid any possible conflict of interest by acting solely in her interest. In the time-honored words of Justice Cardozo, the fiduciary relationship requires "[n]ot honesty alone, but the punctilio of an honor the most sensitive . . .." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545, 62 A.L.R. 1 (1928). Keene breached this duty when he accepted the loan from Morris and made an unsecured, risky loan of her funds to Adams.

Therefore, the Board did not err in concluding that because Keene's conduct violated the standard of care a CPA owes to clients, he was negligent under former RCW 18.04.295(2) (Laws of 1986, ch. 295, § 11).

Keene's third argument is that the trial court need not defer to an agency ruling. However, because this court does not review the trial court's action, this argument has no merit.

### III

■■■ Keene contends that the evidence is insufficient to support the Board's findings. An agency order may be overturned under the WAPA if the reviewing court determines that "[t]he order is not supported by evidence that is sub-

stantial when viewed in light of the whole record before the court . . .". RCW 34.05.570(3)(e). Under this standard, which applies to questions of fact, evidence is substantial "if it would convince an unprejudiced, thinking mind of the truth of the declared premise". *Jefferson Cy. v. Seattle Yacht Club*, 73 Wn. App. 576, 588, 870 P.2d 987, *review denied*, 124 Wn.2d 1029 (1994).

The Board found that Keene was negligent when he: (1) "borrowed funds from Ms. Morris to invest in a corporation in which [he] was an officer and principal stockholder without advising Ms. Morris of the precarious financial condition of the corporation . . .."; (2) "loaned funds from Ms. Morris to an acquaintance . . . without notifying Ms. Morris' appointed guardian or guardian ad litem of the loan . . .."; and (3) "withdrew funds from Ms. Morris without notifying Ms. Morris' appointed guardian or guardian ad litem of the withdrawals".[3] The evidence supporting the Board's decision to sanction Keene has been set forth in the statement of facts, and is substantial. Thus, the Board did not err in finding Keene negligent.

## IV

Keene's final contention is that the sanctions the Board imposed are excessive or arbitrary and capricious, and its order must therefore be overturned. *See* RCW 34.05-.570(3)(i). However, the scope of review of an order alleged to be arbitrary or capricious is narrow, and the challenger carries a heavy burden. *Pierce Cy. Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983). The *Pierce County* court went on to note that:

> Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.

*Pierce Cy.*, 98 Wn.2d at 695 (quoting *State v. Rowe*, 93 Wn.2d 277, 284, 609 P.2d 1348 (1980)). In addition, action

---

[3]Clerk's Papers, at 37.

taken by a disciplinary board after giving a licensee ample opportunity to be heard, "exercised honestly and upon due consideration", is not arbitrary and capricious, even if erroneous. *Medical Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 483, 663 P.2d 457 (1983).

■ Here, in addition to revoking Keene's license for 5 years, the Board imposed several conditions on his reinstatement. The power to impose "such terms and conditions as it deems suitable" is granted to the Board under former WAC 4-25-360. One condition the Board imposed on Keene's reinstatement is that he repay to Morris's estate the $10,000 he borrowed from Morris. Keene's contention that the Board may not require repayment of a debt that has been discharged in bankruptcy is well taken. The bankruptcy code prohibits discrimination against bankrupt debtors, and prohibits a state from "exacting a discharged debt as the price of receiving or retaining a license." *In re Bradley*, 989 F.2d 802, 804 (5th Cir. 1993) (citing 11 U.S.C. § 525(a)). *See also* 3 *Collier on Bankruptcy* ¶ 525.02 (Lawrence P. King ed., 15th ed. 1995); *Perez v. Campbell*, 402 U.S. 637, 29 L. Ed. 2d 233, 91 S. Ct. 1704 (1971). For this reason, the Board exceeded its authority in imposing this condition.

However, the remaining sanctions imposed by the Board were not arbitrary or capricious. Even though a 5-year license revocation is harsh, the action was not taken without due consideration.

For the reasons stated above, the condition for reinstatement requiring Keene to repay the discharged $10,000 loan to Morris's estate is reversed. The remainder of the order revoking Keene's CPA license and establishing conditions for reinstatement is affirmed.

HOUGHTON, A.C.J., and BRIDGEWATER, J., concur.

Review denied at 127 Wn.2d 1020 (1995).