[No. 37598-9-I.   Division One.   September 15, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH VERNON KNUTSON, *Appellant*.

*Thomas M. Kummerow* of *Washington Appellate Project*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Raymon E. Thomas, Deputy*, for respondent.

PER CURIAM — Joseph Knutson, a juvenile at the time of the trial court proceeding, was suspended from high school for punching another student. He was subsequently convicted for second degree criminal assault and appeals his conviction on the basis of double jeopardy. He argues that because he was given a five-day suspension, any subsequent criminal prosecution for the same assault is barred. The trial court denied Knutson's motion for dismissal on grounds of double jeopardy. Because we conclude that the imposition of a suspension is not founded on punishment for a criminal violation, but is instead based upon the school district's need to preserve a beneficial learning environment for all students and to maintain good order and discipline in the school, we hold that a suspension may be fairly characterized as remedial, and is rationally related to the school's goals. Knutson's suspension therefore does not constitute "punishment" for purposes of double jeopardy and does not bar his criminal prosecution. We affirm.

## FACTS

On November 3, 1994, Joseph Knutson intentionally punched another student in the locker room of Tahoma High School. The other student did not strike back, and Knutson continued to punch him in the face several times. The incident resulted in a broken nose and a punctured nasal cavity for the other student, and a five-day suspension from high school for Knutson. He was also subsequently charged and convicted of second degree assault, and given a suspended sentence of 21-28 weeks commitment to the Division of Juvenile Rehabilitation, contingent upon his compliance with certain conditions.

## DISCUSSION

The double jeopardy clause of the Fifth Amend-

ment of the U.S. Constitution[1] protects a criminal defendant against multiple punishments for the same offense. *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995). The Fifth Amendment's double jeopardy provision is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The Washington State Constitution's prohibition against double jeopardy[2] provides the same protection as the federal double jeopardy clause. *Gocken*, 127 Wn.2d at 107, 109. Determining whether a second proceeding arising out of the same facts constitutes double jeopardy is a question of law, reviewed *de novo*. *State v. Frodert*, 84 Wn. App. 20, 25, 924 P.2d 933 (1996), *review denied*, 131 Wn.2d 1017, 936 P.2d 417 (1997).

Knutson contends that jeopardy attached with his suspension because the suspension was not solely remedial, but served punitive purposes as well.[3] However, assuming without deciding that double jeopardy analysis is applicable in this context, the relevant inquiry is not whether the school suspension is *solely* remedial, but: (1) whether the suspension may fairly be characterized as remedial, rather than serving solely retributive or deterrent purposes; and (2) whether the suspension bears a rational relation to the government's remedial purpose. *See State v. McClendon*, 131 Wn.2d 853, 867-68, 935 P.2d 1334 (1997).

It is clear that in Washington, a school's disciplinary measures serve remedial purposes, not solely retributive or deterrent purposes. The mission of Washington's school system is to provide "a beneficial learning environment

---

[1]The Fifth Amendment states: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V.

[2]The Washington State Constitution states that "[n]o person shall be compelled in any criminal case to . . . be twice put in jeopardy for the same offense." CONST. art. I, § 9.

[3]Since Knutson filed his brief, the Washington Supreme Court has clarified when a civil sanction constitutes "punishment" for double jeopardy purposes. *See State v. McClendon*, 131 Wn.2d 853, 935 P.2d 1334 (1997). Neither the State nor Knutson has submitted any briefing with regard to *McClendon*.

for all students," and to that end, corrective measures are implemented so that "good order and discipline" may be maintained in each classroom. RCW 28A.600.020; *see* WAC 180-40-210, WAC 180-40-225(2), WAC 180-40-245(2), WAC 180-40-230(4), WAC 180-40-235(3)(a). For example, a school district's rules establishing types of misconduct "must have a real and substantial relationship to . . . the preservation of the health and safety of students . . . and the preservation of an educational process which is conducive to learning." WAC 180-40-225(2).

Discipline in the classroom is also important because public education serves the higher objective of teaching young adults to "inculcate the habits and manners of civility as values in themselves . . . ." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 681, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986) (internal quotation marks omitted). In other words:

> Th[e] [school's] duty to maintain order and discipline is not founded upon arbitrary grounds. The school's function is to educate children, both intellectually and socially, to prepare them to properly function in our evermore complex adult world. Because of the number of students brought together during a school day, the educational function can only be accomplished by maintaining order and discipline in the school. Further, certificated school personnel must maintain schoolroom decorum in order to protect other students' rights to be secure and to be left alone.

*State v. McKinnon*, 88 Wn.2d 75, 80-81, 558 P.2d 781 (1977).

By implementing corrective or disciplinary measures, schools strive not only to maintain a healthy leearning environment for *all* students, but also to provide students with the tools and skills necessary for developing into responsible adults. A suspension therefore does not serve solely retributive or deterrent purposes. That is not to say that there is no punitive aspect whatsoever to a suspension; however, though a sanction may carry the "sting" of punishment, this does not necessarily character-

ize it as "punishment" for double jeopardy purposes. *Mc-Clendon*, 131 Wn.2d at 868. We conclude that a school suspension may be fairly characterized as remedial.

Moreover, a suspension bears a rational relation to the school's remedial purpose. *See id.* at 867-68. The remedial purpose of the disciplinary measure is to maintain good order and discipline. RCW 28A.600.020; *see* WAC 180-40--245(2). Indeed, a short-term suspension which temporarily removes students who might harm or disrupt other students is rationally related to achieving this goal.

Here, Knutson was suspended for intentionally punching a fellow student in the face several times. His suspension was not based upon the commission of a criminal violation. Instead, his five-day absence from other students was a reasonable means of preserving a beneficial learning atmosphere for all students. Furthermore, the disciplinary measure of a short-term suspension is not overwhelmingly disproportionate to the harm and disruption caused by repeatedly punching another student in the face. *See McClendon*, 131 Wn.2d at 864-65. Thus, we conclude that his suspension may be fairly characterized as remedial, and is rationally related to the school's goals.[4] Knutson's suspension does not constitute "punishment" for double jeopardy purposes.

We affirm the Order of Disposition.

---

[4]This case appears to be one of first impression in our jurisdiction. However, we note that several other courts have addressed this issue and have applied a similar analysis, holding that a school suspension does not constitute "punishment" for double jeopardy purposes. *See Ex parte K.H.*, 700 So. 2d 1201 (Ala. Crim. App. 1997); *State v. Davis*, 126 N.C. App. 415, 485 S.E.2d 329 (Ct. App. 1997); *In re Welfare of E.R.D.*, 551 N.W.2d 238 (Minn. Ct. App. 1996); *In re C.M.J.*, 259 Kan. 854, 915 P.2d 62 (1996); *Clark v. State*, 220 Ga. App. 251, 469 S.E.2d 250 (1996); *In re Gila County Juvenile Delinquency Action*, 169 Ariz. 53, 816 P.2d 950 (Ct. App. 1991).