[No. 16725-9-III.  Division Three.  December 17, 1998.]

*In the Matter of the Disciplinary Proceeding Against*
ERIC P. BROWN, D.D.S., *Appellant.*

ERIC P. BROWN, D.D.S., *Appellant*, v. THE DEPARTMENT OF
HEALTH, DENTAL DISCIPLINARY BOARD, *Respondent.*

*Mark E. Vovos*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Andrew A. Fitz, Assistant*, for respondent.

SWEENEY, J. — Eric P. Brown, D.D.S., was convicted of 10 felony counts related to the use of fraudulent billing schemes in his dental practice. The Washington State Dental Disciplinary Board filed a statement of charges alleging unprofessional conduct stemming from the felony convictions and the treatment of three patients. Among

10

other sanctions, the Board revoked Dr. Brown's license for five years.

The questions presented are (1) whether there was sufficient evidence to support the Board's conclusion that Dr. Brown's patient care constituted unprofessional conduct; (2) whether the sanctions were arbitrary, capricious, and disproportionate to others similarly situated; and (3) whether the sanctions imposed by the Board, in addition to his sentence for the criminal conviction, violated the double jeopardy clause. We find no error and affirm.

FACTS

Eric P. Brown, D.D.S., graduated from the University of Washington School of Dentistry and received his license to practice in 1984. Dr. Brown went to work for his father, Ervin L. Brown, D.D.S., in Spokane. His father had practiced in Spokane since 1960. After Dr. Brown joined the office, his father continued to control the management of the practice, staff, and billing system.

In October 1991, the Spokane County Sheriff began an investigation of fraudulent billing schemes at the Brown and Brown Dental Office. In February 1993, both dentists pleaded guilty to four counts of first degree theft, five counts of violation of the Health Care False Claim Act, and one count of making false statements in connection with a medical care program.

The court sentenced Dr. Eric Brown to 90 days of home confinement, and 240 hours of community service. The court further ordered him to pay restitution jointly with his father to numerous insurers, individuals, and the Department of Social and Health Services in the amount of $125,839.98.

On March 5, 1993, the Dental Disciplinary Board filed a statement of charges against Dr. Brown alleging unprofessional conduct stemming from the felony charges and the treatment of three patients. Because Dr. Brown disputed

the charges of unprofessional conduct in regard to patient care, he requested an adjudicative proceeding. On January 14, 1994, the Board conducted a hearing and found Dr. Brown's criminal convictions arising from the use of fraudulent billing schemes constituted unprofessional conduct pursuant to RCW 18.130.180(17). It also concluded that Dr. Brown's treatment of Debra Hull, Neil Thomas, and JoAnn Gray was substandard constituting incompetence, negligence, malpractice, and was therefore unprofessional conduct pursuant to RCW 18.130.180(4).

The Board ordered Dr. Brown's license suspended for five years. After five years, he could petition for reinstatement provided (1) he completed 40 hours of continuing education, (2) successfully completed the dental licensure examination, and (3) refunded fees charged to complaining witnesses. If reinstated, he would be subject to a two-year probation, 80 hours of clinical training, and at least two unannounced audits each year.

Dr. Brown's father settled with the Board by agreeing to a license suspension for three years with the right to apply for reinstatement after two.

Dr. Brown appealed to Spokane County Superior Court and moved to stay the Board's order pending review. The court granted the motion to stay. On June 20, 1997, the Superior Court affirmed the Board action.

## DISCUSSION

■ *Standard of Review.* We apply the standards of the Washington Administrative Procedure Act, RCW 34.05, directly to the agency record in reviewing agency adjudicative proceedings. *William Dickson Co. v. Puget Sound Air Pollution Control Agency*, 81 Wn. App. 403, 407, 914 P.2d 750 (1996) (citing *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402-03, 858 P.2d 494 (1993)).

We may reverse an administrative order if it (1) is based on an error of law; (2) is unsupported by substantial evidence; (3) is arbitrary or capricious; (4) violates the constitution; (5) is beyond statutory authority; or (6) when the

agency employs improper procedure. RCW 34.05.570(3); *Tapper*, 122 Wn.2d at 402; *Olmstead v. Department of Health*, 61 Wn. App. 888, 891-92, 812 P.2d 527 (1991).

*Sufficiency of Evidence Regarding Unprofessional Conduct.* Dr. Brown argues that the evidence does not support the Board's findings that his treatment of three patients fell below the standard of care. RCW 18.130.180(4). He urges that the only issue before the Board on his standard of care was whether he should have used "gutta-percha" to reconstruct root canals rather than "silver cones."

He argues that "silver cones" may be less popular but are still acceptable. He did not train with silver cones, but he argues: Dental industry standards do not require the use of gutta-percha rather than silver cones. He learned the use of silver cones from his father, who successfully used the technique for over 30 years. Some dental schools teach the use of silver cones for root canals. Finally, he argues that even if the silver cones technique is nontraditional, that alone is not unprofessional conduct. RCW 18.130.180(4).

Dr. Brown also contends that his treatment did not cause injury or create an unreasonable risk of injury to any of the three patients. RCW 18.130.180(4).

When reviewing an administrative agency decision, we review issues of law de novo. *Kellum v. Department of Retirement Sys.*, 61 Wn. App. 288, 291, 810 P.2d 523 (1991) (citing *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983)); *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 728, 818 P.2d 1062 (1991). We can then substitute our judgment for that of the administrative body on legal issues. *Id.*; *William Dickson Co.*, 81 Wn. App. at 407. However, we accord substantial weight to the agency's interpretation of the law it administers—especially when the issue falls within the agency's expertise. *Haley*, 117 Wn.2d at 728 (citing *St. Francis Extended Health Care v. Department of Soc. & Health Servs.*, 115 Wn.2d 690, 695, 801 P.2d 212 (1990)); *US West Communications, Inc. v. Utilities & Transp. Comm'n*, 86 Wn. App. 719, 728, 937 P.2d 1326 (1997).

██ ██ Dr. Brown has not assigned error to any specific findings of fact as required by RAP 10.3(g). Rather, an assignment of error reads: "The Superior Court erred by affirming the Dental Disciplinary Board's Findings of Fact, Conclusions of Law, and Final Order." Br. of Appellant at 1. First, this court's function is to review the record and order of the administrative tribunal—not that of the superior court. *Kellum*, 61 Wn. App. at 291. Second, "there must be specific assignments of error before we will go behind the trial court's findings." *Daves v. Nastos*, 39 Wn. App. 590, 595, 694 P.2d 686, *aff'd in part, rev'd & remanded in part*, 105 Wn.2d 24, 711 P.2d 314 (1985). When there has been no specific assignment of error to findings of fact, "the findings become the established facts and our review must be limited to whether they support the conclusions of law and judgment." *In re Perry*, 31 Wn. App. 268, 269, 641 P.2d 178 (1982).

██ Dr. Brown does not dispute any of the agency's findings. He simply disagrees with their assessment of the standard of care. An assignment of error not argued in the appellant's brief is deemed abandoned. *Pappas v. Hershberger*, 85 Wn.2d 152, 153, 530 P.2d 642 (1975); *In re J.R.H.*, 83 Wn. App. 613, 616, 922 P.2d 206 (1996). Therefore, our review is limited to the Board's conclusions that Dr. Brown's treatment of Debra Hull, Neil Thomas, and JoAnn Gray constituted unprofessional conduct.

The Dental Disciplinary Board derives its authority from the Regulation of Health Professions—Uniform Disciplinary Act. RCW 18.130. The intent of the Legislature in creating the Act is to "assure the public of the adequacy of professional competence and conduct in the healing arts." RCW 18.130.010. The Act provides that "[i]ncompetence, negligence, or malpractice which results in injury to a patient or which creates an unreasonable risk that a patient may be harmed" constitutes unprofessional conduct for any license holder under the jurisdiction of the chapter. RCW 18.130.180(4).

██ An administrative agency may use its experience

and specialized knowledge to evaluate and draw inferences from the evidence when finding unprofessional conduct. RCW 34.05.452(5); *Davidson v. Department of Licensing,* 33 Wn. App. 783, 785, 657 P.2d 810 (cited with approval in *Croft v. Arizona State Bd. of Dental Exam'rs,* 157 Ariz. 203, 755 P.2d 1191, 1197 (Ariz. Ct. App. 1988)), *review denied,* 99 Wn.2d 1011 (1983). "[A]n administrative board comprised of medical practitioners is competent to determine the propriety of medical conduct without the aid of expert testimony." *Davidson,* 33 Wn. App. at 785-86. And "expert testimony regarding the propriety of medical conduct could be disregarded by a board of this type and in all probability would have little effect on the decisionmaking process." *Id.* at 786. "As to such specialized matters, we give deference to administrative expertise." *Medical Disciplinary Bd. v. Johnston,* 99 Wn.2d 466, 482, 663 P.2d 457 (1983).

This administrative proceeding started before a health law judge and finished with the Dental Disciplinary Board, consisting of three licensed and qualified dentists. Also Blake McKinley, D.D.S.; Patrick Stevens, D.D.S.; and Aaron Levit, D.D.S., offered expert testimony on Dr. Brown's treatment. Both Dr. Brown and his father testified. Documentary evidence included x-rays.

Here, ample evidence supports the Board's findings, and those findings amply support the Board's conclusions of unprofessional conduct.

Debra Hull: In November 1991, Ms. Hull saw Dr. Brown for the placement of two crowns. Dr. Brown had to redo one of the crowns since he did not create the proper fit the first time. In the meantime, Ms. Hull was required to wear a temporary crown. Ms. Hull sought treatment from James Hood, D.D.S., in July 1992.

Dr. Hood wrote to the Dental Disciplinary Board explaining that the crown placed on tooth #14 was not properly seated. Dr. Brown placed the distal margin of the crown on a cement base rather than a solid tooth structure. The improper seating of the crown resulted in decay of the tooth and required Ms. Hull to undergo another procedure. Ms.

Hull sent a detailed complaint to the Dental Disciplinary Board on July 16, 1992. The Board admitted both Dr. Hood's letter and Ms. Hull's complaint into evidence at the hearing.

During his hearing, Dr. Brown did not dispute the problems with his treatment of Ms. Hull, including the improper seating and margins. Nor did he dispute Dr. Hood's opinions. All of this then provided substantial evidence that Dr. Brown's treatment of Ms. Hull fell below the standard of care and was therefore unprofessional conduct. RCW 34.05.452(5); RCW 18.130.180(4); *Davidson*, 33 Wn. App. at 785-86.

Neil Thomas and JoAnn Gray: Dr. Brown challenges the Board's conclusions of unprofessional conduct regarding the treatment of Mr. Thomas and Ms. Gray. He argues that "silver cones" are an acceptable alternative to gutta-percha for reconstructing root canals. Br. of Appellant at 10-11.

The use of silver cones for root canal therapy had not been taught at the University of Washington Dental School since 1980. Dr. Brown graduated from the University of Washington and was trained to use gutta-percha for endodontic treatment. Dr. Brown was not trained in the use of silver cones at school, but rather learned, on the job, from his father. The use of silver cones has been below the standard of care for endodontic treatment since the 1980s. The preferred material for root canals is gutta-percha, a rubber-like latex material, because it is more reliable, conforms more readily for shaping and filling of the entire canal, and is less likely to fail than silver cones. Dr. Brown used silver cones rather than gutta-percha for root canals he performed on Mr. Thomas and Ms. Gray. And the root canals performed on Mr. Thomas and Ms. Gray failed. This supports the Board's conclusions that Dr. Brown's conduct constituted unprofessional conduct.

Moreover, the Board's conclusions of incompetence did not rest solely on the fact that silver cones were used instead of gutta-percha. It was not the use of a nontraditional treatment, in and of itself, which led the Board to

conclude that Dr. Brown provided substandard care. The undisputed findings also show that Dr. Brown's execution of the silver cone technique, as well as other treatment procedures, was substandard. The evidence in the record substantially supported the Board's conclusions that Dr. Brown's conduct in regard to Mr. Thomas and Ms. Gray constituted unprofessional conduct pursuant to RCW 18.130.180(4).

*Arbitrary and Capricious.* Dr. Brown next contends the sanctions imposed by the Board were out of proportion to his offenses when compared to those imposed on his father for the same conduct and to other practitioners in similar situations. He argues that because the sanctions far exceed those imposed against other professionals in more egregious and/or similar circumstances, the Board's order was arbitrary, capricious, and contrary to law. He urges the "proportionality standard" used in attorney discipline cases here.

An agency's determination of sanctions should be accorded considerable judicial deference as it is peculiarly a matter of administrative competence. *State ex rel. Washington Fed'n of State Employees v. Board of Trustees*, 93 Wn.2d 60, 68-69, 605 P.2d 1252 (1980). We can reverse an arbitrary or capricious agency order. RCW 34.05.570(3)(i); *Heinmiller v. Department of Health*, 127 Wn.2d 595, 609, 903 P.2d 433, 909 P.2d 1294 (1995), *cert. denied*, 518 U.S. 1006 (1996). "However, the scope of review of an order alleged to be arbitrary or capricious is narrow, and the challenger carries a heavy burden." *Keene v. Board of Accountancy*, 77 Wn. App. 849, 859, 894 P.2d 582, *review denied*, 127 Wn.2d 1020 (1995); RCW 34.05.570(1)(a).

Arbitrary and capricious action is "willful and unreasoning action, without consideration and in disregard of facts and circumstances." *Heinmiller,* 127 Wn.2d at 609. "Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached." *Id.; In re Stockwell*, 28 Wn. App. 295, 302, 622 P.2d 910 (1981). "Action taken after giv-

ing respondent ample opportunity to be heard, exercised honestly and upon due consideration, even though it may be believed an erroneous decision has been reached, is not arbitrary or capricious." *Heinmiller*, 127 Wn.2d at 609-10; *Keene*, 77 Wn. App. at 859-60 (citing *Johnston*, 99 Wn.2d at 483).

The "harshness" of an agency's discipline or sanction is not the test for arbitrary and capricious action. *Heinmiller*, 127 Wn.2d at 609. Agencies " 'need not fashion identical remedies', and the courts may 'not enter the allowable area of [agency] discretion.' " *Shanlian v. Faulk*, 68 Wn. App. 320, 328, 843 P.2d 535 (1992) (quoting *Stahl v. University of Wash.*, 39 Wn. App. 50, 55-56, 691 P.2d 972 (1984)). We must be guided by the Administrative Procedure Act—not lawyer discipline cases guided by the Code of Professional Conduct, Rules for Lawyer Discipline, and the Supreme Court which looks to a proportionality standard when imposing sanctions. *In re Discipline of McMullen*, 127 Wn.2d 150, 162, 896 P.2d 1281 (1995); *In re Discipline of Gillingham*, 126 Wn.2d 454, 459-60, 896 P.2d 656 (1995).

Dr. Brown argues that the five-year revocation of his license is disproportionate when compared to the three-year revocation imposed on his father. He does not specifically challenge the other sanctions, but argues rather that the total sanctions were excessive, arbitrary, capricious, and disproportionate to others similarly situated.

The sanctions here were imposed following a hearing. The facts were considered. Dr. Brown had an opportunity to present his arguments. "It therefore cannot be said that those sanctions resulted from willful and unreasoning action." *Heinmiller*, 127 Wn.2d at 610. The length and extent of the penalty here is not the result of willful or unreasoning action and it is not therefore arbitrary or capricious. *Tomlinson v. State*, 51 Wn. App. 472, 482, 754 P.2d 109, *review denied*, 110 Wn.2d 1036 (1988). It was well within the Board's discretion to impose a sanction heavier than that of Dr. Brown's father because of the additional findings of unprofessional conduct relating to patient care. *Heinmiller*, 127 Wn.2d at 609; *Shanlian*, 68 Wn. App. at 328.

■ *Double Jeopardy*. Dr. Brown argues that the Board's additional sanctions against him were in effect a second punishment for the same felony conduct violating the double jeopardy clause of the Fifth Amendment. "Determining whether a second proceeding arising out of the same facts constitutes double jeopardy is a question of law, reviewed de novo." *State v. Knutson*, 88 Wn. App. 677, 680, 946 P.2d 789 (1997) (emphasis omitted).

"The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against multiple punishments for the same offense." *Ludeman v. Department of Health*, 89 Wn. App. 751, 756, 951 P.2d 266 (1997) (citing *State v. McClendon*, 131 Wn.2d 853, 862, 935 P.2d 1334, *cert. denied*, 522 U.S. 1027, 118 S. Ct. 624 (1997)). The double jeopardy clause is applicable to the states through the Fourteenth Amendment. *Knutson*, 88 Wn. App. at 680. "The Clause protects only against the imposition of multiple criminal punishments for the same offense . . . ." *Hudson v. United States*, 522 U.S. 93, 99, 118 S. Ct. 488, 493, 139 L. Ed. 2d 450 (1997).

■ Double jeopardy applies only when the two proceedings involve the same offense under the "same elements" test. *Ludeman*, 89 Wn. App. at 756. "The test, as recently stated by the United States Supreme Court, is 'whether each offense contains an element not contained in the other; if not, they are the "same offense" and double jeopardy bars additional punishment and successive prosecution.' " *Id.* (citing *United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993)).

In *Ludeman*, the Department of Health revoked Ms. Ludeman's massage license for five years and imposed a fine on her for violating the Uniform Disciplinary Act. *Ludeman*, 89 Wn. App. at 754. The administrative hearing was conducted after Ms. Ludeman had been convicted of one count of prostitution in 1991, and charged with prostitution and resisting arrest after having sexual contact with an undercover police officer during a massage. *Id.* The health law judge found that Ms. Ludeman's acts consti-

tuted unprofessional conduct in violation of RCW 18.130.180(1) (prohibiting acts of moral turpitude) and (24) (prohibiting sexual contact with a client).

On appeal, the court noted that the intent behind the Uniform Disciplinary Act (UDA), applicable to health care professionals, was to "impose a strict set of conduct requirements on professionals in whom the public places its trust and respect in order to preserve the integrity of the profession and protect the public. *This goal differs from that of the criminal justice system." Ludeman*, 89 Wn. App. at 760 (emphasis added) (footnote omitted). The *Ludeman* court therefore held "[b]ecause the crime of prostitution and the violations of the UDA are not the same offense for the purpose of double jeopardy analysis, we need not reach the argument that the revocation of Ludeman's massage license and the fine the Department imposed constitute punishment within the meaning of the Double Jeopardy Clause." *Id.*

Here, as in *Ludeman*, the double jeopardy clause is not implicated. First, it cannot be said that the administrative proceeding and sanctions were for the exact same offense for which Dr. Brown had already been punished. The Board sanctioned Dr. Brown for unprofessional conduct arising out of his felony convictions in violation of RCW 18.130.180(17) (convictions of a felony relating to the practice of the person's profession is unprofessional conduct); RCW 18.130.180(1) (acts involving moral turpitude, dishonesty, or corruption are unprofessional conduct); and RCW 18.130.180(13) (misrepresentation or fraud in any aspect of the conduct of business is unprofessional conduct).

The Board *also* sanctioned Dr. Brown for the treatment of three patients that fell below the standard of care constituting incompetence, negligence, and malpractice. RCW 18.130.180(4). In its discretion, the Board could have imposed these exact sanctions without considering the felony convictions. *Federation of State Employees*, 93 Wn.2d at 69. Clearly, the civil sanctions were not imposed for the

same offense. And the findings of unprofessional conduct do not even arise out of the same set of facts. *Knutson*, 88 Wn. App. at 680.

Here, as in *Ludeman*, because Dr. Brown's felony convictions "and the violations of the UDA are not the same offense for the purpose of double jeopardy analysis, we need not reach the argument that revocation" of Dr. Brown's dental license constitutes punishment within the meaning of the double jeopardy clause. *Ludeman*, 89 Wn. App. at 760.

Affirmed.

KURTZ, A.C.J., and BROWN, J., concur.

Reconsideration denied February 18, 1999.

Review denied at 138 Wn.2d 1010 (1999).