IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 83418-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN BRUCE PERRA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Steven Perra took over $10,000 in goods from a Chehalis Walmart and was convicted on four counts of second degree burglary, one count of first degree organized retail theft, one count of first degree theft, one count of second degree theft, and two counts of third degree theft.

Perra contends retrial is required because the trial court denied his motion for a continuance to retain private, rather than appointed, counsel. Because the right to counsel of choice does not include the right to unduly delay trial or to seek appointment of counsel one cannot afford, he fails to show the court abused its discretion by denying his motion.

He also contends retrial is required because he received ineffective assistance of counsel. But he fails to show defense counsel was deficient for declining to assist with introducing false testimony.

Perra contends resentencing is required because his convictions for theft merge with his conviction for organized retail theft.  The first degree theft conviction and a third degree theft conviction merge with the conviction for organized retail theft, but the other theft convictions do not.  Resentencing is also required to strike several legal financial obligations and to recalculate Perra's offender score after removing a conviction voided by State v. Blake.[1]

Perra also argues resentencing is required because his exceptional sentence was excessive.  Removing several convictions will lower Perra's offender score.  Because the court imposed a "free crimes" exceptional sentence based, in part, on his high offender score, on remand, the court must reconsider whether to impose an exceptional sentence based upon Perra's corrected offender score.

Therefore, we affirm Perra's convictions and remand for resentencing in accordance with this opinion.

## FACTS

From fall of 2019 through spring of 2020, the same man entered a Chehalis Walmart four times and stole over $10,000 in goods, mostly jewelry.  Security cameras recorded each incident, and Sean Gabignaud, an asset protection employee, watched the footage and filed reports with the Chehalis Police Department after each incident.  Gabignaud recognized the same culprit in each video, but his identity was unknown.

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

In March of 2020, Officer Noel Shields received Walmart's report of a jewelry theft that had occurred on the 14th. The report included pictures of the man identified by Gabignaud as the culprit. Officer Jason Roberts happened to see the pictures and recognized the culprit as Steven Perra. Officer Shields requested a copy of Perra's driver's license from the Department of Licensing and, comparing the photos, concluded Perra was the man in the security footage. Officer Shields gave the name to Gabignaud, and he confirmed that Perra had been permanently trespassed, or prohibited, from Walmart since 2011.

The State charged Perra with four counts of second degree burglary, first degree organized retail theft, first degree theft, second degree theft, and two counts of third degree theft. He was arraigned on July 23, 2020, and trial was set for October 19. Perra was found to be indigent and had defense counsel appointed.

At a pretrial hearing on October 16, Perra personally requested a two-week continuance to retain private counsel, explaining he needed the time to obtain the money to pay for an attorney, Richard Woodrow, that he had contacted. Perra noted he had wanted to retain private counsel since "I first started this matter."[2] The court denied the continuance, explaining that Perra "had a long time to retain an attorney" because the case had been pending for months.[3] The court believed Perra was attempting to delay the trial.

---

[2] Report of Proceedings (RP) (Oct. 16, 2020) at 7.

[3] Id. at 9.

On the first day of trial and after a jury was empaneled, Perra again personally requested a continuance, but this time, it was to allow for an alibi witness from Texas to give testimony. Defense counsel told the court that the only defense witness would be Perra's son and that the Texas witness "won't be relevant" for reasons he would explain privately to Perra.[4]

Perra also renewed his request for a continuance to retain Woodrow, saying he had obtained the money but could only retain him if granted a continuance. Defense counsel explained he had spoken with Woodrow's office, and Woodrow had not been paid or made any arrangements to appear on Perra's behalf. The court denied the request for a continuance.

After opening statements, Perra asked to personally address the court. He requested another continuance. He contended a continuance was required because, first, the police officers who interviewed his son yelled and were threatening, and, second, because he needed a continuance to retain Woodrow since his appointed defense counsel was "working against me."[5] Both defense counsel and the prosecutor were present during the interview. Defense counsel contradicted Perra, telling the court nobody yelled or made threats. The court again denied Perra's request for a continuance.

After the State rested its case the following day, defense counsel asked to speak with the court without the State present. Defense counsel believed Perra

---

[4] RP (Oct. 19, 2020) at 84.

[5] Id. at 102.

and his son planned on giving false testimony and brought his concern to the court's attention. The court ruled both Perra and his son would be allowed to testify and could be called to the stand by defense counsel, but defense counsel would not be required to do more than ask both witnesses to tell their version of events.

The jury found Perra guilty of all charges. During sentencing, Perra stipulated to the accuracy of his lengthy criminal history and the State's calculations of the offender score on each conviction. Depending on the conviction, Perra's offender score ranged from 16.5 to 25. The court found Perra's high offender scores "result[ed] in some of the current offenses going unpunished," and it imposed an exceptional sentence.[6] The exceptional sentence runs each burglary conviction consecutively and runs the other convictions concurrently with those, resulting in 210 months of incarceration. The court also imposed legal financial obligations.

Perra appeals.

ANALYSIS

## I. Right to Choose Defense Counsel

Perra argues his Sixth Amendment right to choice of counsel was violated by the trial court's denial of his continuance motions.

---

[6] Clerk's Papers (CP) at 174-75.

The Sixth Amendment generally guarantees a defendant the right to choose their counsel.[7] But it does not guarantee "representation by an attorney [they] cannot afford."[8] And it does not "permit a defendant to unduly delay the proceedings."[9] When a defendant requests a continuance to retain new counsel, the trial court weighs the right to counsel of choice "against the public's interest in the prompt and efficient administration of justice."[10] This decision is "highly fact dependent" and can be made considering "all relevant information."[11]

We review denial of a continuance requested for the purpose of retaining new counsel for abuse of discretion.[12] A court abuses its discretion when its decision rests on untenable grounds or was made for untenable reasons.[13]

Perra first requested a continuance to hire Woodrow as defense counsel on October 16, only three days before trial, and before he had the money to do so. He requested a continuance again on October 19 after trial began, and he still lacked the money to retain Woodrow. Indeed, it was uncertain whether Woodrow

---

[7] State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010) (citing Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988)).

[8] Id. (citing State v. Roberts, 142 Wn.2d 471, 516, 14 P.3d 713 (2000)).

[9] Id. (citing State v. Roth, 75 Wn. App. 808, 824, 881 P.2d 268 (1994)).

[10] Id. at 365 (citing Roth, 75 Wn. App. at 824).

[11] State v. Hampton, 184 Wn.2d 656, 669, 361 P.3d 734 (2015) (citing Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed 2d 921 (1964)).

[12] Id. at 662 (citing Aguirre, 168 Wn.2d at 365).

[13] Id. at 670 (quoting State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)).

could actually be retained because neither Perra nor his family appeared to be able to pay for a private defense attorney.[14]

Perra asserted he would require only two weeks to secure Woodrow as defense counsel. But this does not account either for the time his new attorney would need to prepare for trial or for the existing demands on Woodrow's schedule that could impact rescheduling. With such an uncertain, open-ended request, granting a continuance could have unduly delayed the proceedings.[15] Under these circumstances, Perra fails to show the court abused its discretion by denying his continuance motions.

II. Ineffective Assistance of Counsel

Perra contends he received ineffective assistance of counsel because of an actual conflict of interest between himself and his defense counsel.[16] We review a claim of ineffective assistance of counsel de novo.[17]

---

[14] See Aguirre, 168 Wn.2d at 365 (no right to choose an unaffordable defense counsel) (citing Roberts, 142 Wn.2d at 516).

[15] See id. (Sixth Amendment does not require an "undue delay" of proceedings) (citing Roth, 75 Wn. App. at 824).

[16] For the first time, in his reply brief, Perra contends defense counsel provided deficient representation by violating his duty of communication. Perra argues "counsel failed to communicate to Mr. Perra that he could not present [his] testimony . . . essentially blindsiding Mr. Perra and leaving him without a cogent defense." Reply Br. at 1. Perra is mistaken. Defense counsel told him before trial began that he could not present false testimony, RP (Oct. 20, 2020) at 341-42, which was one reason he first requested a continuance to obtain new counsel, RP (Oct. 20, 2020) at 347.

[17] State v. Koeller, 15 Wn. App. 2d 245, 257, 477 P.3d 61 (2020) (citing State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009)).

A defendant bears the burden of proving defense counsel was ineffective.[18] The defendant must prove defense counsel's performance was deficient and prejudiced the outcome of trial.[19] Failure to prove either deficiency or prejudice ends the analysis.[20]

After the State presented its case-in-chief, defense counsel asked for a hearing without the State present in order to discuss an issue involving RPC 3.3(a)(4), which prohibits a lawyer from "knowingly . . . offer[ing] evidence that the lawyer knows to be false." Defense counsel, after Perra consented to him doing so, recounted a pretrial conversation in which Perra admitted committing the alleged crimes due to drug addiction. In the same conversation, Perra also admitted that he was captured by a security camera while committing at least one theft. Perra, however, intended to testify that he was in Texas when the crimes were committed and that he was not the man in the security camera footage.

On appeal, Perra does not argue defense counsel lacked a reasonable basis to conclude he would present false testimony. "[A] defendant has no legitimate interest that conflicts with his or her attorney's obligation not to tolerate perjury and to adhere to the Rules of Professional Conduct."[21] RPC 3.3(a)(4)

---

[18] Id. (citing State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011)).

[19] Id. (citing Grier, 171 Wn.2d at 32-33).

[20] State v. Woods, 198 Wn. App. 453, 461, 393 P.3d 886 (2017) (citing State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996)).

[21] State v. Berrysmith, 87 Wn. App. 268, 277, 944 P.2d 397 (1997) (citing Nix v. Whiteside, 475 U.S. 157, 187, 106 S. Ct. 988, 89 L. Ed. 2d 123 (1986) (Blackmun, J. concurring)).

prohibits an attorney from presenting evidence that they know is false. RPC 3.3(e) lets an attorney "refuse to offer evidence that the lawyer reasonably believes is false." Every attorney has a "special duty . . . to prevent and disclose frauds upon the court."[22] Thus, an attorney's duty of loyalty "is limited to legitimate, lawful conduct" and does not require "taking steps or in any way assisting the client in presenting false evidence."[23] Because Perra fails to demonstrate an actual conflict between himself and defense counsel, Perra fails to demonstrate ineffective assistance.[24]

III.  Double Jeopardy & Merger

Among his convictions, the jury found Perra guilty of first degree theft, second degree theft, two counts of third degree theft, and first degree organized retail theft. Perra contends the first degree organized retail theft conviction must be vacated either because being punished for that crime and the thefts violates double jeopardy or because organized retail theft merges with the other thefts.

---

[22] Nix, 475 U.S. at 168-69; accord Berrysmith, 87 Wn. App. at 276-77 ("A lawyer who reasonably believes that his or her client intends to commit perjury may neither advocate nor passively tolerate the client's position.") (citing RPC 3.3; RPC 1.6; State v. Fleck, 49 Wn. App. 584, 744 P.2d 628 (1987)).

[23] Nix, 475 U.S. at 166; see RPC 1.6(b)(2) ("A lawyer to the extent the lawyer reasonably believes necessary: . . . may reveal information relating to the representation of a client to prevent the client from committing a crime.").

[24] See id. at 171 (representation was not deficient when defense counsel's adherence to ethics and refusal to aid in presenting false testimony resulted in an alleged conflict with their client); see also State v. Elwell, No. 99546-0, slip op. at 22, (Wash. Mar. 3, 2022), https://www.courts.wa.gov/opinions/pdf/995460.pdf ("'[A] conflict over strategy is not the same thing as a conflict of interest.'") (quoting State v. Cross, 156 Wn.2d 580, 607, 132 P.3d 80 (2006)).

Because the merger doctrine is "an extension of double jeopardy principles,"[25] we review both allegations de novo.[26]

The United States and Washington constitutions "provide the same protections" against double jeopardy,[27] which prohibits imposing multiple punishments for the same offense.[28] "In this context, 'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'"[29]

The State does not argue the legislature intended to expressly authorize different punishments, so we apply the Blockburger[30] test to decide whether Perra's right against double jeopardy was violated.[31] He was not placed in double

---

[25] State v. Berg, 181 Wn.2d 857, 864, 337 P.3d 310 (2014) (citing U.S. CONST. amend. V).

[26] State v. Freeman, 153 Wn.2d 765, 770, 108 P.3d 753 (2005) (citing State v. Johnston, 100 Wn. App. 126, 137, 996 P.2d 629 (2000); State v. Knutson, 88 Wn. App. 677, 680, 946 P.2d 789 (1997)).

[27] State v. Muhammad, 194 Wn.2d 577, 615-16, 451 P.3d 1060 (2019) (quoting In re Pers. Restraint of Francis, 170 Wn.2d 517, 522 n.1, 242 P.3d 866 (2010)).

[28] Id. at 616 (quoting Whalen v. United States, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)).

[29] Id. (quoting Missouri v. Hunter, 459 U.S. 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983)).

[30] Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[31] Muhammad, 194 Wn.2d at 617 (citing State v. Kier, 164 Wn.2d 798, 804, 194 P.3d 212 (2008)).

jeopardy if each crime is distinct and requires the State to prove a fact that the other crime does not.[32]

To apply this test, we examine if the different crimes, "as charged and proved, are the same in law and fact, [then] they may not be punished separately absent clear legislative evidence to the contrary."[33] To convict Perra on each of the theft counts, the State had to prove he "wrongfully obtained or exerted control over the property of another" on a particular date and for a particular value.[34] To convict Perra of organized retail theft, the State had to prove he "wrongfully obtained or exerted control over property from one or more mercantile establishments over a period of 180 days."[35] Because the theft and organized retail theft charges are based upon the same prohibited conduct, occurring at the same time, with the same retail store victim, these crimes are the same in law and fact.

"However, the mere fact that the same conduct is used to prove each crime is not dispositive."[36] To determine whether the legislature intended to impose multiple punishments for the same conduct, we apply the merger doctrine.[37]

---

[32] State v. Parmelee, 108 Wn. App. 702, 708-09, 32 P.3d 1029 (2001) (quoting Blockburger, 284 U.S. at 304).

[33] Freeman, 153 Wn.2d at 777 (citing Blockburger, 284 U.S. at 304).

[34] CP at 44, 46, 48, 50.

[35] CP at 51.

[36] Freeman, 153 Wn.2d at 777 (emphasis omitted) (citing United States v. Dixon, 509 U.S. 688, 704, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993)).

[37] Muhammad, 194 Wn.2d at 617; Freeman, 153 Wn.2d at 777.

"Under that doctrine, a lesser included offense merges 'into a more serious offense when a person is charged with both crimes, so that the person is not subject to double jeopardy.'"[38]

In State v. Parmalee, this court concluded a defendant charged with several lesser included offenses and one more serious offense could be found guilty of the lesser included offenses that were not needed to prove the more serious offense.[39] An ex-husband argued his three convictions for violating a protection order shielding his ex-wife merged with his conviction for stalking her.[40] To prove felony stalking, the State had to demonstrate the ex-husband repeatedly harassed his ex-wife.[41] Thus, two of the protection order violations were necessary to prove the more serious felony stalking charge, merging with it.[42] The remaining protection order violation was not necessary for the stalking conviction and did not merge with it.[43] This court remanded for the ex-husband to be resentenced on the felony stalking conviction and for one protection order violation.[44]

Here, Perra contends his conviction for first degree organized retail theft merges with his theft convictions. But he confuses how merger works because, if

---

[38] Id. at 618 (quoting BLACK'S LAW DICTIONARY 1184 (11th ed. 2019)).

[39] 108 Wn. App. 702, 710, 32 P.3d 1029 (2001).

[40] Id.

[41] Id. at 711.

[42] Id.

[43] Id.

[44] Id.

the doctrine applies, lesser included theft convictions merge into the more serious first degree organized retail theft conviction.[45]  Regardless, the State concedes Perra's conviction for first degree theft and one conviction for third degree theft merge into the first degree organized retail theft conviction.[46]  We accept its concession.

Perra was found guilty on count XI for first degree organized retail theft, which meant he "wrongfully obtained or exerted unauthorized control over property" with a value of at least $5,000 "from one or more mercantile establishments over 180 days."[47]  As charged, this required proving at least two thefts.  He was also found guilty on count II, a third degree theft charge for taking about $230 in goods in September of 2019, and on count IV, a charge for first degree theft of goods worth more than $5,000 in December of 2019.  Because Perra could not have been found guilty of the more serious organized retail theft charge without the less serious charges, counts II and IV merge with count XI.[48]

---

[45] Muhammad, 194 Wn.2d at 618.  First degree theft and first degree organized retail theft are both class B felonies, but first degree organized retail theft has a higher seriousness level.  RCW 9A.56.030(2); RCW 9A.56.350(2); RCW 9.94A.515.

[46] We note that Perra does not dispute that these particular convictions, rather than others, merge into first degree organized retail theft.

[47] RCW 9A.56.350(1)(c), (2).

[48] See Berg, 181 Wn.2d at 865 (explaining the merger doctrine "represents an 'aversion to prosecuting a defendant . . . based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them'") (quoting State v. Green, 91 Wn.2d 431, 458-59, 588 P.2d 1370 (1979) (Utter, J. dissenting)) (internal quotation marks omitted).

However, the remaining theft charges do not merge because, as in Parmalee, they were not needed to convict Perra of the more serious charge.

IV.  Sentencing

Perra argues remand is required to strike several discretionary legal financial obligations and to recalculate his offender score after removing a conviction that State v. Blake rendered void.  The State concedes resentencing is required to remove the legal financial obligations and strike the conviction voided by Blake.  We accept its concession.

Perra also contends remand is required for resentencing because his exceptional sentence was excessive.[49]  The trial court imposed an exceptional sentence, at least in part, under RCW 9.94A.535(2)(c), the "free crimes" enhancement, which allows an exceptional sentence when a defendant "committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."[50]  The court explained Perra had "an extraordinary record and an extraordinary criminal history."[51]  Because the basis of Perra's exceptional sentence was, in part, a high offender

---

[49] We note that Perra asserts his 210-month sentence was "30 times the high end of his standard range of 58 months," App. Br. at 38, but he is mistaken. Second degree burglary is a class B felony with a seriousness level of III. RCW 9A.52.030(2); RCW 9.94A.515.  With an offender score of 9 or greater, it has a standard range of 51 to 68 months.  RCW 9.94A.510.  At most, Perra's sentence was about four times higher than the low end of the standard range.

[50] CP at 174.

[51] RP (Oct. 28, 2020) at 505.

score that will be lowered on remand, the trial court must reconsider whether to impose an exceptional sentence.

Therefore, we affirm Perra's convictions and remand for resentencing in accordance with this opinion.

_____

WE CONCUR:

_____        _____
Mann, C.J.