[No. 55787-4-I.   Division One.   May 1, 2006.]

EMILIE JOHNSON, *Appellant*, v. THE DEPARTMENT OF HEALTH, *Respondent*.

404

*Alan S. Richey,* for appellant.

*Robert M. McKenna, Attorney General,* and *Gail S. Yu, Assistant,* for respondent.

¶1 BECKER, J. — A health law judge suspended Emilie Johnson's registration to practice as a counselor after finding that she had misrepresented herself to be a chemi-

cal dependency counselor. We affirm the order of discipline, finding substantial evidence of misconduct.

¶2 Emilie Johnson is a licensed massage practitioner. Johnson's 26-year-old son, referred to only as "Client A" throughout the proceedings, was charged with possessing drug paraphernalia. A municipal court judge found him guilty in February 2002. The judge directed him to obtain an alcohol and drug evaluation and to comply immediately with any recommendations.

¶3 Client A obtained an evaluation by a chemical dependency professional at Future Visions, a State-licensed chemical dependency facility. The evaluator, Karen Parker, diagnosed him as being dependent on marijuana. She recommended a year-long intensive outpatient treatment program, including frequent group and individual sessions and random urinalyses. Client A was unable to pay for treatment at Future Visions and did not attend any sessions there.

¶4 The judge directed Client A to appear in court for a review hearing in May 2002. When Client A failed to appear for this hearing, the judge issued a bench warrant. Client A appeared at the judge's walk-in docket on August 5, 2002. The judge agreed to quash the warrant on condition that Client A bring proof of his evaluation to a hearing scheduled for October 12, 2002.

¶5 On August 5, 2002, Future Visions received a telephone call from a counselor requesting a copy of Client A's evaluation. After obtaining a release from Client A, Future Visions complied with this request.

¶6 Before the October hearing, the court received two letters addressed to the judge and vouching for Client A's progress in treatment. These letters were the basis for the disciplinary proceeding from which this appeal arises. The first letter, typed on the letterhead of a Family Wellness Center in Kent, was signed by Melanie Berry as "Counselor." The second, typed on letterhead for "Auburn Family Wellness Center," was signed by Emilie Johnson, also as

"Counselor." Johnson's letter represented that Client A had "complied with all requirements":

This letter is to update you on [Client A's] progress and report. [Client A] has completed his: Intensive Outpatient program: of 3 hour groups / four times per week, for 6 weeks. He is continuing Outpatient: 1.5 hour groups / one time per week, with Follow-up: 1 hour group / one time per month. He also has service projects on a monthly basis.

[Client A] continues individual counseling sessions with random urinalyses, the current U.A. [urinalysis assessment] was on 9/04/2002 and was negative. He has stayed clean and sober for 3 months.

[Client A] has passed all random urinalyses. Continues in group, family, and personal counseling. He has complied with all requirements and is showing great progress in his efforts.

¶7 When the judge read the two letters, he thought they had been prepared by chemical dependency professionals. But one of the court clerks noticed that the address of the Auburn Family Wellness Center was the same as Client A's home address. The clerk called the telephone number on the letter and reached Johnson. Johnson acknowledged that she was Client A's mother as well as his treatment provider.

¶8 Johnson had recently obtained a registration to practice as a counselor, issued by the State in August 2002. *See* RCW 18.19.090. But she was not a certified chemical dependency counselor. Upon learning this, the judge wrote a letter to the Department of Health (Department) complaining that Johnson had attempted to perpetrate a fraud on the court to enable her son to avoid treatment.

¶9 The Department filed unprofessional conduct charges against Johnson and Berry under the Uniform Disciplinary Act, chapter 18.130 RCW. Johnson denied that she had violated the act and requested a hearing. After the hearing, a health law judge found against Johnson, suspended her registration as a counselor for 36 months, and ordered her to pay an administrative fine of $250 and attend an ethics course. The superior court affirmed the final order of the

health law judge. Berry's case took the same course with the same result. Only Johnson appeals.

¶10 Appeals from Department disciplinary actions are governed by the Administrative Procedure Act, chapter 34.05 RCW. RCW 18.130.140. This court sits in the same position as a superior court in reviewing an agency's decision. We may grant relief from an agency order if the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d).

¶11 The health law judge initially noted that there is some uncertainty about whether the Department had to prove its allegations by a preponderance of the evidence or by clear and convincing evidence. It is unnecessary for us to take a position on that issue in this case because the health law judge evaluated the evidence under the higher standard. Conclusion of Law 2.3.

¶12 The order issued by the health law judge found that Johnson committed an act of moral turpitude when, though not a chemical dependency counselor, she submitted to the court a letter which appeared on its face to be a chemical dependency report. This was a violation of RCW 18-.130.180(1), which states that unprofessional conduct can be shown by the commission of "any act involving moral turpitude, dishonesty, or corruption relating to the practice of the person's profession, whether the act constitutes a crime or not." The order also found that Johnson's letter was an act of misrepresentation. The letter was found a misrepresentation in that it was intended to convince the judge that Client A was in compliance with court-ordered services and that Johnson was providing those services, when in fact Johnson was neither qualified nor licensed to do so. This was a violation of RCW 18.130.180(13) (misrepresentation in "any aspect of the conduct of the business or profession").

*Counseling Services*

¶13 Johnson chiefly attacks a preliminary finding that she "was providing counseling services to Client A by

drafting the letter on behalf of Client A for submission to the court,"[1] as well as the conclusion that she "was practicing as a registered counselor when she assisted Client A." Conclusion of Law 2.4. She bases her argument on the statutory definition of "counseling" as the employment of "therapeutic techniques . . . for a fee." RCW 18.19.020(2). Johnson argues that she could not have been providing Client A with counseling services because drafting a letter is not using a therapeutic technique, and there was no finding that she charged a fee. Johnson contends that the fact that she did not give her son a disclosure statement, as is required of counselors by RCW 18.19.060, further shows that she did not have a formal counseling relationship with him. Johnson testified that she counseled her son only as a mother would, within a family and religious context, and that the relationship between them is not subject to regulation by the State. *See* RCW 18.19.040(6) (chapter not intended to prohibit or restrict "[t]he practice of counseling by a person under the auspices of a religious denomination, church, or organization, or the practice of religion itself").

¶14 Johnson's arguments miss the mark because they assume that she was being disciplined for misconduct within a counseling relationship. The discipline was imposed because she misrepresented her status to the court. She signed the letter as "Counselor" without informing the court that she was acting only as a family or religious counselor. She intended the court to believe that she was acting in her professional capacity as a counselor, even if in fact she had not established a professional relationship.

¶15 To be sanctionable, misconduct does not have to be committed during the actual diagnosis or treatment of an actual patient. The provision authorizing sanctions for "moral turpitude" targets misconduct "relating to the practice of the person's profession." RCW 18.130.180(1); *see also Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 733, 818 P.2d 1062 (1991) (the conduct "need not have occurred during the actual exercise of professional or occupational

---

[1] Clerk's Papers at 157.

skills"). And the statute defines unprofessional conduct to include misrepresentation or fraud in "any aspect of the conduct of the business or profession." RCW 18.130.180(13). Thus, it was not error for the health law judge to find that Johnson was practicing as a counselor when she assisted Client A. Writing a report about how a patient has responded to treatment is part of any health care provider's normal practice.

¶16 Johnson also takes issue with the underlying court order that required Client A to get treatment. She contends the order is void for vagueness, and that it was beyond the court's authority because it failed to recognize Client A's right to refuse counseling. We decline to address these arguments because, despite Johnson's protestation to the contrary, they amount to an impermissible collateral attack on the municipal court order. And even if the treatment order was found to be unlawful, Johnson has not shown how such a finding would affect the outcome of her case.

*Moral turpitude*

¶17 The principal question in applying the moral turpitude provision is "the relationship between the practice of the profession and the conduct alleged to be unprofessional." *Haley*, 117 Wn.2d at 731. The conduct must "indicate unfitness to bear the responsibilities of, and to enjoy the privileges of, the profession." *Haley*, 117 Wn.2d at 731.

¶18 Johnson testified that she prepared the letter at Client A's request and obtained all the information in the letter directly from him.[2] Based on testimony presented by the Department at the hearing, the health law judge found that registered counselors in Washington "have a professional and ethical obligation to clearly identify 'subjective' and 'objective' information included by the counselor in counseling records and professional reports." Finding of Fact 1.9. He concluded that Johnson violated this standard

---

[2] *See, e.g.*, Clerk's Papers at 185.

when she reported that Client A was in compliance with requirements for group and individual counseling sessions, service projects, and urinalyses without stating that her report was based on what Client A told her rather than on her own observations.

¶19 Johnson contends the moral turpitude finding must be stricken because there is insufficient evidence that registered counselors are held to this professional standard. Whether a practice is unacceptable in a profession "is a question of fact for the trier of fact." *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 605, 903 P.2d 433 (1995). Challenged findings of fact are reviewed for substantial evidence. *Heinmiller*, 127 Wn.2d at 607. Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises. *Heinmiller*, 127 Wn.2d at 607. Review is deferential, requiring the appellate court to view the evidence and its reasonable inferences in the light most favorable to the prevailing party in the highest forum that exercised fact-finding authority. *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995).

¶20 Janice Boden testified that she is the program manager at the Department for several programs, including the registered counselor program. She had worked at the Department for 16 years, 2 of those years as program manager. Her job as program manager required her to work through the Department's process for complaints, investigations, and disciplinary hearings. Through this process, she gained knowledge of the professional standards applicable to counselors. Boden testified that registered counselors are not allowed to accept referrals of court-ordered treatment. In her opinion, if a letter vouching for a client's compliance with court-ordered treatment is based on the client's self-report only, the letter should so state in order to meet professional standards.[3] The health law judge found Boden's testimony credible.

---

[3] Clerk's Papers at 316-24.

¶21 Johnson contends Boden's testimony is deficient because Boden is not herself a registered counselor. But it is reasonable to infer that Boden's position gave her sufficient exposure to the professional community to know that community's professional standards. As Boden's testimony confirms, there are no educational, training, or examination requirements to become a registered counselor, and the standards of the community are not set forth in law. Nevertheless, it would be reasonable for any professional community to expect that a practitioner will not vouch for a client's compliance with a court order based solely on the client's self-reported data without disclosing the limited source of the information. We conclude Boden's testimony was sufficient to support the challenged finding as to the professional standard for a registered counselor. While Johnson maintains she did not know of this professional standard, discipline is not limited to those situations where a professional has actual knowledge that her conduct is inappropriate. *Heinmiller*, 127 Wn.2d at 603 ("Misconduct is not less harmful to the public simply because the professional who engages in it fails to recognize it as such.").

## *Misrepresentation*

¶22 Without objection, the health law judge used a dictionary definition of misrepresentation as "Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts."[4] One reason the health law judge concluded that Johnson's letter was a misrepresentation was that it led the court to believe that Client A was in compliance with court-ordered treatment when he was not. The health law judge commented that Johnson might have been able to insulate herself from the finding of unprofessional conduct if she had specified that the information was based on her son's self-report.[5] Johnson con-

---

[4] Clerk's Papers at 158 (citing BLACK'S LAW DICTIONARY (6th ed. 1990)).

[5] Clerk's Papers at 159.

tends there was no misrepresentation because the Department failed to prove that Client A was *not* in compliance.

¶23 Substantial evidence that Client A did not comply with the treatment plan was provided when the municipal court judge testified about Client A's failure to appear:

> As near as we can tell he has never complied with treatment recommendations, and was summoned back into court to address that issue. He failed to appear and his status has been warrant status [for nearly one year].[6]

It is reasonable to infer that if Client A had actually complied, he would have presented proof of compliance to the court. Because there is substantial evidence that the information about Client A's compliance was false, Johnson committed misconduct by including it in her letter to the judge.

¶24 The health law judge found that Johnson made a further misrepresentation by leaving the impression that she was a chemical dependency professional. Conclusion of Law 2.6. Johnson contends there is no evidence that the municipal court judge was actually misled by her letter. But the judge testified that "he had the impression that it was prepared by a chemical dependency professional," as it appeared on its face to be similar to the type of reports he often receives from certified chemical dependency counselors after court-ordered evaluations. Finding of Fact 1.6. He said if his clerk had not noticed the address and investigated, he would have relied on the letter as proof of compliance. And Johnson testified that it was her intent in sending the letter to "let the judge know" that her son was in compliance with the recommendations of the evaluation.[7] We conclude this was sufficient evidence to support the conclusion that Johnson misled the judge about her credentials.

---

6 Clerk's Papers at 222.

7 Clerk's Papers at 198.

*Suspension Order*

¶25 Without citing authority, Johnson contends the three year suspension she received is arbitrary because the Department has no guidelines with which to determine the fairness of its sanctions. She asks this court to find that three years is an excessive sanction and to reduce it in a fair and equitable manner.

¶26 An agency's determination of sanctions must be given considerable deference because it is "peculiarly a matter of administrative competence." *In re Disciplinary Proceeding Against Brown*, 94 Wn. App. 7, 16, 972 P.2d 101 (1998).

¶27 This court can reverse an arbitrary or capricious agency order. RCW 34.05.570(3)(i). The "harshness" of the sanction is not the test for arbitrary and capricious action. *Heinmiller*, 127 Wn.2d at 609. Arbitrary and capricious action is willful and unreasoning action, without consideration and in disregard of facts and circumstances. *Heinmiller*, 127 Wn.2d at 609. Where there is room for two opinions, that standard is not met. *Heinmiller*, 127 Wn.2d at 609. Moreover, when the agency gives the person disciplined "ample opportunity to be heard, exercised honestly and upon due consideration," it has not acted arbitrarily or capriciously. *Wash. Med. Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 483, 663 P.2d 457 (1983).

¶28 Johnson's appellate brief refers to a conversation counsel had with a Department attorney about the disciplinary charges, in which that attorney allegedly stated he had "guessed" that three years was an appropriate sanction to recommend. Not only is this conversation not a part of the record, but the Department attorney was not the decision maker as to the sanction imposed. Given the high level of deference owed to an agency's determination, and considering the opportunity Johnson had to argue for a

lighter sanction, we conclude the sanction imposed by the health law judge is not arbitrary and capricious.

¶29 Affirmed.

SCHINDLER, A.C.J., and ELLINGTON, J., concur.