

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 MAY 20  AM 11: 05

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| RANDALL KINCHELOE, | ) | No. 68642-9-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | UNPUBLISHED OPINION |
| OF HEALTH, Health Care Assistant | ) | |
| Program, | ) | FILED: May 20, 2013 |
| | ) | |
| Respondent. | ) | |

VERELLEN, J. — Randall Kincheloe, a former licensed practical nurse (LPN), applied for a special health care assistant credential, but did not disclose in his application that he had previously had his ability to practice restricted by requirements that he work only under direct supervision, not function as a supervisor, head nurse, or charge nurse, and not hold a job where he would "float" between stations. As a result, the Secretary of the Department of Health (Department) denied his application for misrepresentation and failure to disclose a material fact. Kincheloe unsuccessfully appealed to the Department's adjudicative service unit. A health law judge conducted an evidentiary hearing before entering a final order denying his application. Kincheloe appealed from the agency decision pursuant to the Administrative Procedures Act (APA), chapter 34.05 RCW. The superior court affirmed, finding that the limitations

imposed by the stipulation included restrictions he failed to disclose in his application. We affirm.

## FACTS

In 2001, while employed as an LPN, Kincheloe entered a "Stipulation to Informal Disposition" with the Nursing Care Quality Assurance Commission (Commission) based on allegations that he had engaged in unprofessional conduct in the course of his employment.[1] In the stipulation, Kincheloe agreed that for one year he would practice as a nurse subject to conditions requiring him to: (1) inform the Commission of his future job descriptions; (2) provide the Commission with his job performance evaluations; (3) provide a copy of the stipulation/order to future employers; (4) take employment only with direct supervision by a registered nurse (RN) and not function as a supervisor, head nurse, or charge nurse; and (5) not work "floating from unit to unit."[2]

In 2010, Kincheloe applied for a health care assistant (HCA) credential. The application asked whether the applicant had ever been found to have violated laws or rules regulating the health care profession, and whether the applicant's credential or privilege to practice had ever been restricted: "Have you ever had any license,

---

[1] Administrative Record at 36-42 (ex. P2). Specifically, the allegations were that Kincheloe failed to administer and document administration of medication, and failed to properly document two instances where patients fell. The administrative record also documents Kincheloe's voluntary participation in the Washington Health Professional Services Program in 2009 and 2010 for allegedly misrepresenting himself as an RN, failing to administer medications, and false documentation of medication administration. He admitted consuming oxycodone he was supposed to administer to a patient in January 2009. He also admitted failing to administer medications to 10 patients.

[2] The stipulation provided that the allegations would constitute a violation if proven, and that Kincheloe "does not admit any of the allegations." Administrative Record at 37. The stipulation also provided that it is not "formal disciplinary action," and "shall not be construed as a finding of unprofessional conduct or inability to practice." Id.

certificate, registration, or other privilege to practice a health care profession denied, revoked, suspended, or restricted by a state, federal or foreign authority?"[3] He answered, "No." The Secretary of the Department denied his application, determining that he concealed or misrepresented a material fact in seeking to obtain the HCA credential.[4]

Kincheloe appealed to the Department of Health. At the April 2011 hearing before a Department health law judge, Kincheloe argued that the conditions he agreed to in the stipulation were not restrictions on his LPN license, practice, or privilege to practice. The health law judge disagreed, determining that the 2001 stipulation restricted Kincheloe's LPN license or privilege to practice, and that the denial of his HCA application was proper because of his misrepresentation or concealment.

Kincheloe appealed the Department's final order to King County Superior Court, pursuant to the APA. The superior court affirmed the final order.

Kincheloe appeals.

ANALYSIS

Kincheloe contends that the Department erred by determining that his license or privilege to practice was previously restricted, and that he misrepresented or concealed that fact in the HCA application. Kincheloe's arguments are not persuasive.

An appellate court reviews final agency orders pursuant to the APA, based on the agency record.[5] The reviewing court will grant relief if the agency's order involves

---

[3] Administrative Record at 30.

[4] Such conduct is defined as "unprofessional conduct." RCW 18.130.180. The program is statutorily authorized to deny an application on the basis of such conduct. RCW 18.130.160(9).

[5] Local 2916, IAFF v. PERC, 128 Wn.2d 375, 380, 907 P.2d 1204 (1995).

an error in interpreting or applying the law, is not supported by substantial evidence, or is arbitrary or capricious.[6] "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity."[7] In reviewing an agency's findings of fact, the reviewing court determines whether the findings are supported by substantial evidence.[8] This standard is highly deferential to the agency fact finder,[9] and requires the reviewing court to view the evidence in the light most favorable to the prevailing party in the highest administrative fact-finding forum below.[10]

Kincheloe argues that there was insufficient evidence that he "intended" to conceal a material fact. We disagree. Viewing the evidence in the light most favorable to the Department, we conclude that the 2001 stipulation and Kincheloe's failure to disclose the stipulation in his application are "substantial evidence" that he concealed a material fact.

Moreover, at the de novo hearing before the Department, it was Kincheloe's burden to prove that he was qualified for the HCA credential. RCW 18.130.055(4) provides:

---

[6] RCW 34.05.570(3). Although the statute provides for several other bases for relief, Kincheloe only argues that the three listed above apply.

[7] RCW 34.05.570(1)(a).

[8] See RCW 34.05.570(3)(e); Terry v. Empl. Sec. Dep't, 82 Wn. App. 745, 748-49, 919 P.2d 111 (1996). This court reviews the findings of the Department, not the findings of the superior court. In re Farina, 94 Wn. App. 441, 450, 972 P.2d 531 (1999). Under this standard, an agency finding of fact will be upheld if supported by "evidence that is substantial when viewed in light of the whole record before the court." RCW 34.05.570(3)(e).

[9] ARCO Prods. Co. v. Washington Utils. & Transp. Comm'n, 125 Wn.2d 805, 812, 888 P.2d 728 (1995).

[10] City of Univ. Place v. McGuire, 144 Wn.2d 640, 652, 30 P.3d 453 (2001).

> A license applicant who is aggrieved by the decision to deny the license or grant the license with conditions has the right to an adjudicative proceeding . . . . The license applicant has the burden to establish, by a preponderance of evidence, that the license applicant is qualified in accordance with the provisions of this chapter.

Kincheloe failed to meet this burden.

Kincheloe asserts that Heinmiller v. Department of Health[11] and Johnson v. Department of Health[12] demonstrate that the Department was required to prove that he had the "intent" to conceal a material fact in his application. They do not.

In Heinmiller, our Supreme Court explained that the goal of the Uniform Disciplinary Act, chapter 18.130 RCW, is to protect the public from the hazards of health care professional misconduct, and that such misconduct "is not less harmful to the public simply because the professional who engages in it fails to recognize it as such."[13] Accordingly, the Heinmiller court rejected the argument that proof of "misrepresentation" and "concealment" required evidence of "actual knowledge" of wrongdoing.[14] Instead, it held that "constructive knowledge" was sufficient to support discipline for misrepresentation or concealment.[15] There is no dispute that Kincheloe knew of the existence of the stipulation and failed to disclose it in his HCA application. This is sufficient under the analysis in Heinmiller.

In Johnson, this court held there was sufficient evidence of misrepresentation of a material fact where a counselor incorrectly told a court that an individual was in

---

[11] 127 Wn.2d 595, 903 P.2d 433 (1995).

[12] 133 Wn. App. 403, 136 P.3d 760 (2006).

[13] 127 Wn.2d at 602-03.

[14] Id. at 602.

[15] Id. at 602, 604.

compliance with court-ordered chemical dependency treatment, even in the absence of proof that she knew the information was false.[16] Johnson does not support Kincheloe's argument that the Department was required to prove he actually knew his answer in the application was a misrepresentation or a concealment of the fact of the earlier restriction imposed in the 2001 stipulation.

Kincheloe next argues that the Department erred as a matter of law by failing to differentiate between different categories of sanctions the legislature authorized the Commission to impose by enacting RCW 18.130.160. We disagree.

In reviewing an agency decision for an error of law, the reviewing court applies a de novo standard of review.[17] Reviewing courts give substantial weight to an agency's interpretation of the laws it administers and to the agency's interpretations of its own rules.[18]

The Uniform Disciplinary Act governs the licensing and discipline of health care professionals.[19] RCW 18.130.050(15) gives the Department the authority to grant or deny license applications.[20] Denial of a license is an authorized sanction for

---

[16] Johnson, 133 Wn. App. at 412-13.

[17] Discipline of Brown, 94 Wn. App. 7, 12, 972 P.2d 101 (1998).

[18] Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs., 82 Wn. App. 495, 518, 919 P.2d 602 (1996).

[19] See RCW 18.122.150. The Uniform Disciplinary Act serves to protect the public and to protect the standing of the medical profession in the eyes of the public. In re Kindschi, 52 Wn.2d 8, 10-11, 319 P.2d 824 (1958).

[20] "[T]he disciplining authority has the . . . authority . . . [t]o grant or deny license applications." RCW 18.130.050(15). "Disciplining authority" is defined as "the agency, board, or commission having the authority to take disciplinary action against a holder of, or applicant for, a professional or business license upon a finding of a violation of this chapter." RCW 18.130.020(6). "Disciplinary action," in turn, is defined as "sanctions identified in RCW 18.130.160." Id.

unprofessional conduct, including misrepresentation or concealment of a material fact in obtaining a license.[21] At the time of the 2001 stipulation, former RCW 18.130.050(13) (1995) authorized the Commission to investigate complaints of unprofessional conduct and impose sanctions.[22] Former RCW 18.130.172 (2000) authorized the Commission to informally dispose of complaints of unprofessional conduct by stipulation, and to impose sanctions in such cases.[23] The available sanctions included, in relevant part, "one or any combination" of the following: "Restriction or limitation of the practice;" "[r]equiring the satisfactory completion of a specific program of remedial education or treatment;" "[t]he monitoring of the practice by a supervisor approved by the disciplining authority;" "[c]ompliance with conditions of probation for a designated period of time;" and "[c]orrective action."[24]

Kincheloe concedes that in the 2001 stipulation he agreed to work only under direct RN supervision and not to float from unit to unit, yet he contends that these conditions were not "restrictions" and his license was not "restricted." This is so, Kincheloe argues, because the sanctions enumerated in RCW 18.130.160(1)-(12), are mutually exclusive categories. Kincheloe contends that the stipulation's conditions were not "restrictions" as enumerated in RCW 18.130.160(3), but required "monitoring of the

---

[21] RCW 18.130.160(9). Under RCW 18.130.180(2) such misrepresentation constitutes unprofessional conduct.

[22] This version of the statute specifically provided the Commission authority to "grant or deny license applications, and in the event of a finding of unprofessional conduct by an applicant or license holder, to impose any sanction against a license applicant or license holder provided by this chapter." Former RCW 18.130.050(13).

[23] RCW 18.130.172, substantially unchanged since the 2001 stipulation, expressly contemplates that the sanctions set forth in RCW 18.130.160 can be imposed as part of the stipulation.

[24] RCW 18.130.160.

practice by a supervisor approved by the disciplining authority," as provided in RCW 18.130.160(5), or "[c]ompliance with conditions of probation for a designated period of time," as provided in RCW 18.130.160(7).

Kincheloe's interpretation of the statute is artificially narrow. The terms "restriction" and "restricted" are not defined in the Uniform Disciplinary Act. Undefined words in a statute are accorded their ordinary meanings.[25] Dictionary definitions of the word "restrict" include "[t]o set bounds or limits to," "to check free activity."[26] "Restriction" is defined as "something that restricts," "confinement within bounds," "a tacit or expressed qualification."[27]

The stipulation's requirements that Kincheloe take employment only with direct supervision by a registered nurse, not function as a supervisor, head nurse, or charge nurse, and not hold a job that where he would float between stations are consistent with the ordinary meaning of "restrictions." In a practical sense, these conditions were rules, provisions, or restraints that confined or limited the type of job he could hold and the scope of duties he could undertake at the workplace, by requiring direct supervision by a nurse with specific credentials, and completely precluding him from working as a supervisor, head nurse, or charge nurse, or in a job requiring him to float between stations. In ordinary usage, his privilege to practice a health care profession was "restricted" by the stipulation.

---

[25] Defined terms should be interpreted in accordance with the policy definition, while undefined terms are interpreted according to their ordinary meanings. S & K Motors, Inc. v. Harco Nat'l Ins. Co., 151 Wn .App. 633, 639, 213 P.3d 630 (2009).

[26] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1937 (2002).

[27] Id.

In addition, Kincheloe's argument that the categories listed in RCW 18.130.160 are mutually exclusive ignores the provision of that section stating that the available sanctions include "one or any combination" of the listed sanctions. By granting the Department authority to combine the sanctions, the statute confirms the categories are not intended to be mutually exclusive.

This court gives "substantial weight and deference . . . to an agency's interpretation of the statutes and regulations it administers."[28] Kincheloe fails to demonstrate that the Department erred in interpreting or applying the law.

Because Kincheloe does not prevail in this appeal, he is not entitled to fees under RCW 4.84.350.

Affirmed.

WE CONCUR:

_____

Cox, J.

_____

Spearman, J.

---

[28] Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs., 82 Wn. App. 495, 518, 919 P.2d 602 (1996).