# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JONATHAN WRIGHT, M.D., | ) | No. 71516-0-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF HEALTH, MEDICAL QUALITY | ) | |
| ASSURANCE COMMISSION, | ) | |
| | ) | |
| Respondent. | ) | FILED: February 9, 2015 |

SPEARMAN, C.J. — Dr. Jonathan Wright was disciplined by the Washington Medical Quality Assurance Commission ("MQAC") for aiding and abetting Roby Mitchell in the unlicensed practice of medicine at Wright's clinic and for refusing to provide records during the investigation. The superior court affirmed the sanctions and Wright appeals. He claims that he was charged unfairly, that the hearing panel misinterpreted the law, and that he was subject to unconstitutional searches and sanctions. We find no error and affirm.

## FACTS

Dr. Jonathan Wright is the medical director of the Tahoma Clinic in King County, Washington, where he supervises physicians and naturopaths. In September of 2007, Roby Mitchell came to work at the clinic, claiming to be a Texas licensed physician. Mitchell applied for licensure in Washington and

treated patients on a regular basis from September 2007 to February 2009. Mitchell resided in Washington during that time.

On April 16, 2009, a Medical Quality Assurance Commission (MQAC) investigator received an inquiry about Mitchell's medical license. A records search confirmed that Mitchell did not have a license to practice in Washington. On April 22, 2009, the panel authorized an investigation.

On May 4, 2009, MQAC contacted Wright about the complaint, citing its authority to open an investigation under RCW 18.130.050, and indicating the investigation was only preliminary and that no charges had been filed. Wright responded on May 14, 2009, asking for the investigation file and "the Commission's determination of merit." Clerk's Papers (CP) at 660. In a letter dated May 21, 2009, MQAC explained to Wright that it had initiated an investigation pursuant to its "'delegation of authority to initiate investigations'" under WAC 246-919-615 and that there was no determination of merit, because the complaint did not involve issues of malpractice. CP at 662. Wright did not find the explanation credible and concluded the investigation was not lawfully authorized.

In March 2010, MQAC requested a detailed explanation of how Wright supervised Mitchell and a sample of patient records that showed Wright's supervising input. Wright declined to provide records, claiming that he needed releases from the patients in question. He also requested that MQAC withdraw its request for patient records, claiming that without a determination of merit, "the request for records is not based on a legal investigation." CP at 184.

2

In July 2010, Wright submitted three sets of patient records that were almost completely redacted except for his signature. MQAC sent Wright another request for records on August 30, 2010, explaining again that "[o]n April 22, 2009, at a regularly scheduled case management team meeting, a panel of four Commissioners determined that this case merited investigation." CP at 202. This request notified Wright that he had fourteen days to comply or he could be subject to charges for failing to cooperate with a lawful investigation. On September 27, 2010, MQAC submitted its final request for records and required that Wright respond within three days, otherwise the case would be referred for action based on failure to cooperate with an investigation.

On March 16, 2011, MQAC charged Wright with violating the Uniform Disciplinary Act, chapter 18.130 RCW, by failing to cooperate with the investigation. Wright ultimately provided five patients records in April 2012. A review of these records resulted in an amended statement of charges filed against Wright that added aiding and abetting the unlicensed practice of medicine. At the hearing on March 19, 2013, an independent panel of MQAC members (the Tribunal) concluded that each of the charges had been proven by clear and convincing evidence. The Tribunal did not find Wright to be a credible witness.

The Tribunal noted that the unprofessional conduct in this case "is not described in a sanctioning schedule in WAC 246-16." CP at 19. Exercising its authority to determine and impose sanctions under WAC 246-16-800(2)(d), the Tribunal considered the severity of the conduct, the lack of remorse, and the risk

3

of patient harm as aggravating factors. Wright was suspended for a period of 90 days and assessed a fine of $7500 and 30 months of probation following suspension. As conditions of his probation, Wright was required to provide proof of the office policy regarding employee verification and appear before MQAC on an annual basis to report the results of any new employee verification efforts. He was also required to submit a paper to MQAC describing the importance of medical licensing and the elements of proper licensure.

Wright petitioned for judicial review and a stay of the Tribunal's final order. The superior court denied his motion for a stay. After reviewing the full administrative record and hearing oral argument from counsel, the superior court affirmed the Tribunal's order in full. Wright appeals.

## DISCUSSION

We apply the standards of the Washington Administrative Procedures Act, chapter 34.05 RCW, directly to the agency record in reviewing agency adjudicative proceedings. Brown v. State, Dep't. of Health, Dental Disciplinary Bd., 94 Wn. App. 7, 11, 972 P.2d 101 (1998). We may reverse an administrative order if it is (1) based on an error of law; (2) is unsupported by substantial evidence; (3) is arbitrary or capricious; (4) violates the constitution; (5) is beyond statutory authority; or (6) when the agency employs improper procedure. Id. Appellate review is confined to the administrative record. Clausing v. State, 90 Wn. App. 863, 870, 955 P.2d 394 (1998). The party challenging the validity of the agency's action bears the burden of showing that the action was invalid. RCW 34.05.570(1)(a).

4

We review an agency's factual findings to determine whether they are supported by substantial evidence sufficient to persuade a fair-minded person of the declared premise. Towle v. State Dep't of Fish & Wildlife, 94 Wn. App. 196, 204, 971 P.2d 591 (1999). We overturn an agency's factual findings only if they are clearly erroneous. Port of Seattle v. Pollution Control Hearings Bd., 151 Wn.2d 568, 588, 90 P.3d 659 (2004). The undisputed facts of an agency's final decision are verities on appeal. Yuchasz v. Dep't of Labor & Indus., __Wn. App. __, 335 P.3d 998, 1001 (2014). Although we give weight to the agency's interpretation of the statutes it administers, we review the agency's legal conclusions de novo. Towle, 94 Wn. App. at 204.

Wright first assigns error to the Tribunal's finding that he was guilty of aiding and abetting. Wright points out that MQAC learned during the course of its investigation that Mitchell's Texas license to practice medicine had been revoked. He contends the aiding and abetting charge is based on an allegation that he facilitated Mitchell's practice of medicine in Washington when he knew that Mitchell's Texas license had been revoked. He argues that MQAC failed to prove that he knew of this fact. Wright misunderstands the allegation against him. The aiding and abetting charge had nothing to do with the status of Mitchell's Texas license. Rather, the claim was that Wright allowed Mitchell to practice medicine in Washington without a license, as required by RCW 18.130.180(10). Wright does not dispute that he allowed Mitchell to see patients at his clinic with full knowledge that Mitchell was not licensed in Washington.

Wright argues that the Tribunal erred by applying a novel interpretation of RCW 18.71.030(6) when it failed to find that Mitchell qualified for the out-of-state exemption. Wright's argument hinges on a remark made by the presiding officer in its order on Wright's motions for summary judgment. The presiding officer's order states "[n]either side offers evidence, sufficient for summary judgment purposes, that describes how [Wright] relied on [the statutory exemption or what the common practice in the profession is concerning having out-of-state physicians practicing in a respondent's clinic or office. Thus, this material fact remains in dispute." Certified Appeal Board Record (CABR) Vol. 5 at 2097. Based on the Order, Wright contends that the Tribunal imposed an arbitrary standard based on a "common practice" and engaged in "retroactive application of rulemaking through ad hoc adjudications" when it imposed this standard. Brief of Appellant at 28. The contention is meritless.

The statutory exemption in RCW 18.71.030(6) applies in limited circumstances. It permits "[t]he practice of medicine by any practitioner licensed by another state or territory in which he or she resides, provided that such practitioner shall not open an office or appoint a place of meeting patients or receiving calls within this state." The Tribunal correctly found that Mitchell did not qualify for the exemption because he was neither licensed in nor a resident of another state. Even if Mitchell had been licensed in Texas and/or maintained a residence there, he would not have qualified, because he met patients and

received calls at Wright's clinic for approximately 18 months.[1] Wright presents no evidence that the Tribunal entertained any consideration of a "common practice" when adjudicating the claims against him.[2]

Wright further claims that MQAC engaged in "ad hoc, retroactive rulemaking by adjudication" when it interpreted the statute to prevent a physician licensed in another state from working as an independent contractor in Washington. Brief of App. at 25. According to Wright, MQAC also made a new rule when it disqualified Mitchell for the statutory exemption based on the time that he practiced at the clinic. Wright compares the requirements of RCW 18.71.030(6) which contain no time limitations, to the temporary permits under WAC 246-12-050 that allow health care professionals to practice for a specific number of days.

Wright's argument fails because neither employment status nor amount of time practicing in Washington are elements of the statutory exemption. Furthermore, there is no indication in the record that the Tribunal considered either these factors when making its decision, or that it engaged in any rulemaking by adjudication based upon them.

Wright claims that his due process rights were violated because according to him, MQAC actually charged him of violating RCW 18.71.030(6), because

---

[1] Wright also argues that the exemption allows physicians licensed in another state to practice in Washington as independent contractors under the supervision of a Washington licensed physician. Wright provides no basis for this argument. The statute does not provide any exemption for physicians practicing as independent contractors.

[2] Wright also argues that because the hearing officer made reference to a "common practice" in ruling on the MQAC's motion for summary judgment, MQAC was required to prove a "'common practice,'" and failed to do so. Brief of Appellant at 20. Wright cites no authority for this argument and we decline to consider it.

Mitchell's Texas license was revoked. He claims he did not receive the constitutionally required notice of this charge, and that it required a "different means of committing the alleged violation" than the statement's charge of generalized "aiding and abetting." Brief of Appellant at 22; CP at 82.

RCW 18.130.090 states that "[i]f the disciplining authority determines, upon investigation, that there is reason to believe a violation of RCW 18.130.180 has occurred, a statement of charge or charges shall be prepared and served upon the license holder or applicant at the earliest practical time. The statement of charge or charges shall be accompanied by a notice that the license holder or applicant may request a hearing to contest the charge or charges." Wright was informed of the nature of the complaint and of all of the charges brought against him.[3] He was charged with and found to have engaged in unprofessional conduct by "aiding or abetting an unlicensed person to practice when a license is required," not by violating the out-of-state licensing exemption. CP at 82.

Wright claims that MQAC creates an unconstitutional condition on a physician's license to practice by "imposing strict liability on physicians for non-compliance with MQAC's warrantless search and seizure procedure for medical records." Brief of Appellant at 37. In other words, he is forced to either comply with an investigation, or waive his rights, including the right to be free from

---

[3] The second amended statement of charges quotes RCW 18.130.180(10) verbatim. The Final Order explicitly states that "[t]he Department proved by clear and convincing evidence that the Respondent violated RCW 18.130.180(10), which defines unprofessional conduct as: Aiding or abetting an unlicensed person to practice when a license is required." CP at 18-19. The final order also states that "[t]he status of Mr. Mitchell's Texas'(sic) license is irrelevant. Even if Mr. Mitchell had had a valid Texas medical credential, he was prohibited from practicing medicine in Washington in the manner in which the Respondent allowed him to practice at his Clinic." CP at 17.

8

search and seizure, the right to object to an unreasonable search and seizure, his patient's privacy rights, or his right to his medical license.

The "unconstitutional conditions" doctrine limits the government's ability to exact waivers of rights as a condition of benefits, even when those benefits are fully discretionary. U.S. v. Scott, 450 F.3d 863, 866 (9th Cir. 2005). A plaintiff alleging a violation of the unconstitutional conditions doctrine, however, must first establish that a constitutional right is being infringed upon. Sanchez v. County of San Diego, 464 F.3d 916, 930-1 (9th Cir. 2006). Administrative regulations are presumed to be constitutional. Nguyen v. Dep't of Health Med. Quality Assurance Comm'n, 144 Wn.2d 516, 536, 29 P.3d 689 (2001). The party challenging a statute or regulation's constitutionality bears the burden of proving its unconstitutionality beyond a reasonable doubt. Madison v. State, 161 Wn.2d 85, 92, 163 P.3d 757 (2007). A professional license is a property interest for which revocation requires due process. Hardee v. State Dep't of Social & Health Servs., 172 Wn.2d 1, 8, 256 P.3d 339 (2011). Wright has not made any showing that he was required to surrender any due process rights by complying with a lawful investigation.

Wright argues that MQAC's procedures "wholly ignore[] the rights and duties conferred by RCW 70.02.060," and other "statutory mandates in favor of procedures that protect patient privacy." Brief of Appellant at 42. Wright has made no showing as to how MQAC's procedures violate a patient's right to privacy. RCW 70.02.050(2)(a) states that "[a] health care provider shall disclose

health care information,...about a patient without the patient's authorization if the disclosure is:

> (a) To federal, state, or local public health authorities,...; when needed to determine compliance with state or federal licensure,... or to investigate unprofessional conduct or ability to practice with reasonable skill and safety under chapter 18.130 RCW."

Under the statute, providers are <u>required</u> to furnish such health care information to MQAC or other authorities for investigations related to licensing or unprofessional conduct.

Wright argues that his sanctions are arbitrary and capricious.[4] He claims that the record shows that he cooperated fully once he understood that MQAC was conducting a lawful investigation.[5] He also claims that the sanctions were imposed as retaliation for his inquiries into MQAC and his conduct in prior investigations.

A reviewing court should defer to an agency's determination of sanctions, because it is a matter of administrative competence. <u>Brown</u>, 94 Wn. App. at 16.

---

[4] Wright also argues that his sanctions are disproportionate compared to the sanctions imposed on other physicians for similar offenses. He included a discussion of other physicians' discipline cases in his brief and submitted the orders from those cases. The orders were not made part of the record on appeal and we decline to consider them.

[5] Wright places undue emphasis on his assumption that MQAC lied to him and led him to believe that the investigation was unofficial by representing that there had been no determination of merit. He argues that MQAC set him up for the failure to cooperate charges, because it deliberately misled him into thinking that the investigation was informal, all the while knowing that it had been officially authorized. Wright claims that he would have complied and did comply once he understood that the investigation was official. Nothing in this record supports these conclusions. The investigation's official status had been explained to Wright multiple times, in letters dating as early as May, 2009. Wright persisted in denying the investigation's status and his need to comply with the request for records, even after receiving warning notices and ultimately facing charges in 2011. It was not until April of 2012 that the parties reached an agreement and Wright produced five sets of patient records showing the level of care Mitchell had administered and Wright's level of supervision.

After finding a license holder has engaged in unprofessional conduct, RCW 18.130.160 grants the disciplinary authority the right to impose sanctions after considering the need to protect or compensate the public. RCW 18.130.160; Lang v. State, Dep't of Health, Dental Quality Assurance Comm'n, 138 Wn. App. 235, 255, 156 P.3d 919 (2007). Arbitrary and capricious action is "'willful and unreasoning action, without consideration and in disregard of facts and circumstances.'" Brown, 94 Wn. App. at 16 (quoting Heinmiller v. Dep't of Health, 127 Wn.2d 595, 609, 903 P.2d 433 (1995). The "harshness" of an agency's discipline or sanction is not the test for arbitrary and capricious action. Heinmiller at 609.

Wright claims that he cooperated "unequivocally for 15 months" and that the Tribunal's declaration that he was non-cooperative "is not supported by the evidence." Brief of Appellant at 43. Wright claims that MQAC's testimony and discovery responses show that it was satisfied with his responses to particular requests. This is insufficient to overcome the administrative finding of fact that he "never complied with the Commission's request for the 30 medical records despite multiple requests." CP at 14. There is also no evidence that any of Wright's prior actions or MQAC's earlier investigations played any part in this case.

Wright argues that the sanction compelling him to write a paper about the benefits of "professional licensing" violates his freedom of speech under the First Amendment. According to Wright, the issue of professional licensing is a "socioeconomic" and "religious issue." Brief of Appellant at 46.

11

A license to practice is a representation to the public concerning the particular qualifications of the holder, one which the public may rely on in selecting a physician. See, Brandwein v. Cal. Bd. of Osteopathic Examiners, 708 F.2d 1466, 1469 (9th Cir. 1983) (no First Amendment violation where state refused to allow osteopath to hold himself out as an M.D. when he did not have such a degree). It is properly within the State's police power to regulate and license professions, especially when public health concerns are affected. Ellestad v. Swayze, 15 Wn.2d 281, 289, 130 P.2d 349 (1942).

Wright argues that the punishment imposed by the Tribunal is an ordered coercion concerning a viewpoint, and thus infringes upon his First Amendment rights of free speech and freedom of religion. But the Tribunal imposed no restrictions on his right to engage in free speech, or to practice any religious philosophy. Wright's apparent objection to the topic of the essay required by the Tribunal does not make the penalty unconstitutional. Writing a paper about the importance of licensing does not violate his First Amendment rights nor does it force him to give up a valuable constitutional right in order to have his license reinstated.

Finally, Wright argues that the Tribunal erred by failing to apply the rule of lenity. The rule of lenity applies in both criminal and quasi-criminal proceedings. See In re Little, 40 Wn.2d 421, 430, 244 P.2d 255 (1952). The rule requires that where two possible constructions of a statute are permissible, the statute must be strictly construed in favor of the accused. State v. Reis, 180 Wn. App. 438, 453, 322 P.3d 1238 (2014) review granted, ___ Wn.2d ___, 336 P.3d 1165

No. 71516-0-I/13

(2014). Wright has not demonstrated any ambiguities in the licensing exemption statute, or any other statute. RCW 18.71.030 is also an exempting statute; the rule of lenity only applies to punitive statutes. State ex rel. Dawson v. Cascade Dist. Ct., 62 Wn. App. 587, 592, 814 P.2d 1229 (1991).

Wright has not shown that the Tribunal acted arbitrarily and capriciously when it imposed sanctions. We affirm the trial court's order and the actions of the Tribunal.

WE CONCUR:

_Spearman, C.J._

_Leach, J._                    _Appelwick, J._